**MID–SOUTH MUSIC CORPORATION et al., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 85–6073.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 21, 1986.
Decided May 11, 1987.

Joe B. Brown, U.S. Atty., Nashville, Tenn., E. Franklin Childress, Jr., Robert L. Welsh, Tax Div., Civil Trial Section, Dept. of Justice, Michael L. Paup (Lead Counsel), Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., Glenn L. Archer, Jr., Roger M. Olsen, Tax Div., Dept. of Justice, Washington, D.C., Jonathan S. Cohen, William A. Whitledge (argued), for defendant-appellant.

William P. Jones (argued), Hendersonville, Tenn., for plaintiff-appellee.

Before MERRITT, WELLFORD and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Defendant, the United States, appeals from a judgment rendered against it by the district court for $174,000 in compensatory damages, and $1,000 in punitive damages, as the result of its having found, after a trial to the court, that employees of the Internal Revenue Service (IRS) had made unauthorized disclosures of information from plaintiff's 1981 income tax return, in violation of 26 U.S.C. § 6103.

This litigation has been the subject of two previously published opinions. In *Mid-South Music Corp. v. United States Dep't of the Treasury*, 579 F.Supp. 481 (M.D. Tenn.1983), the district court sustained defendant's Fed.R.Civ.P. 12(b)(6) motion to dismiss plaintiff's complaint for failure to state a claim upon which relief could be granted. In going beyond the face of the complaint, the district court examined a "prefiling letter" sent by IRS to persons who had invested in plaintiff's tax shelter, advising them that, if they claimed a deduction on their income tax returns, the deduction would be disallowed. That letter follows:

Re: Tax Shelter Promotion: Mid-South Music Corporation

Dear Taxpayer:

Our information indicates that you invested in the above-named tax shelter in 1982. Based upon our review of that promotion, the indications are that the purported tax deductions are not allowable.

If you claim such deductions on your income tax return, your return will be examined and the deductions disallowed. With respect to the tax shelter deductions, you may be subjecting yourself to a negligence penalty under Section 6653(a) and/or the overvaluation penalty

under Section 6659 of the Internal Revenue Code.

> Sincerely,
> /s/
> Alvin H. Kolak
> District Director

In relevant part, 26 U.S.C. § 6103 provides:

> **(a) General Rule.**—Returns and return information shall be confidential, and except as authorized by this title—
>
>> (1) no officer or employee of the United States
>
>> ....
>
> shall disclose any return or return information obtained by him....
>
> **(b) Definitions.**—For purposes of this section—
>
>> ....
>
>> **(2) Return information.**—The term "return information" means—
>
>> (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense....

In referring to the letter, the district court concluded:

> Here, the letter did not disclose whether *the plaintiff's* return "* * * was, is being, or will be examined or subject to other investigation or processing. * *" Instead, the letter disclosed that, if the third-party recipients of the letter claimed the questioned deductions on *their* tax-returns, *their tax-returns*—not that of the plaintiff—would be examined. This Court is simply unpersuaded by the argument of Mid-South that this letter disclosed that its own return was, is being, or will be examined; the letter made no allusion whatever to the plaintiff's tax-return.
>
> Neither does the Court believe that the letter disclosed improperly " * * * a taxpayer's identity * * *." The letter stated the name of the plaintiff, however; it referred to Mid-South in its status as a business entity which had promoted the venture in which the addresses of the subject-letter had invested. The letter did not identify Mid-South in its capacity as a taxpayer, rather as a business establishment. That Mid-South was a taxpayer also was but coincidental.
>
> Here, the disclosure of the plaintiff's name merely specified the venture with which the affected taxpayers had transacted business and particularized to them the particular deductions with which the IRS was concerned; there is no suggestion that the name of the plaintiff was derived by IRS from its tax return.

579 F.Supp. at 485.

On appeal, we reversed on the basis that plaintiff's complaint had stated a colorable claim, and that dismissal in response to a Fed.R.Civ.P. 12(b)(6) motion was premature. Indeed, this conclusion was inescapable when we considered plaintiff's allegation that "[t]he actions of the individual Defendants, as officers and employees of the United States, knowingly, or by reason of negligence, disclosed return information with respect to the Plaintiff in violation of Section 6103 of the Internal Revenue Code of 1954 (26 U.S.C.A.)."

We therefore remanded the case to the trial court for consideration of plaintiff's claim and the defenses raised by defendant. *Mid-South Music Corp. v. Kolak*, 756 F.2d 23 (6th Cir.1984).

At the trial of plaintiff's cause, upon remand, plaintiff relied solely upon the letter quoted above, as its evidence to support the allegation that it had been the victim of unlawful disclosure.

This time the trial court concluded that the letter did amount to an unlawful disclo-

sure of return information, and explained its about-face in this manner:

13. In commenting upon the language of the foregoing letter in its memorandum opinion and order of November 2, 1983 herein, this Court noted *inter alia:* "there is no suggestion that the name of the plaintiff [Mid-South] was derived by the IRS from its tax return"; in addition, Mid-South was not claiming at that time that there was bad faith on the part of personnel of the IRS. Subsequent evidence reflected that Mr. Weissand had indeed obtained information concerning the tax shelter implicated from the 1981 income-tax return of Mid-South in the process of his examination thereof, and that personnel of the IRS acted in bad faith in sending such letter for the intended purpose of destroying the tax-shelter promotion of Mid-South before its abusiveness was established as a matter of law.

14. Exhibit no. 1 (the above letter) disclosed "knowingly" that Mid-South's tax return for 1981 "was * * * examined" by IRS,[1] and that Mid-South's promotion was "subject to other investigation or proceeding." As is obvious, that personnel of the IRS could have altered the receiving taxpayers of their forebodings without revealing the name of the taxpayer, Mid-South, proves that the unlawful disclosures were "willfull" and made with the bad-faith intention to put Mid-South's promotion "out of business."

■ Once it became clear, upon remand, that the only evidence of disclosure relied upon by plaintiff was the letter, the focus of the issue presented to the trial court was whether the letter amounted to an improper disclosure of plaintiff's return information, as contemplated by 26 U.S.C. § 6103. If it did not, then concerns about motive and attitude, while perhaps relevant to damages, were irrelevant to the issue of liability. When the letter is parsed, one is led to the inescapable conclusion that the district court had correctly characterized its contents, when it earlier went beyond

the complaint to examine it in the course of deciding the Fed.R.Civ.P. 12(b)(6) motion. The letter identifies plaintiff as a promoter of tax shelters, and advises investors that IRS has reviewed plaintiff's promotion of tax shelters and will disallow deductions taken in reliance upon plaintiff's tax shelter promotion. There is no indication that plaintiff's tax returns were being examined or subjected to investigation. *See In re Grand Jury Investigation,* 688 F.2d 1068, 1071 (6th Cir.1982).

■ The letter is not subject to the criticism that it is simply a cleverly worded attempt to evade the "spirit" of the disclosure prohibition. Under the circumstances of this case, we are hard-pressed to discern the evil to be guarded against by resorting to Section 6103. We are unable to divine a public policy undergirding the statute which would prevent the IRS from advising a taxpayer-investor, in advance of his filing of his income tax return, that a deduction will be disallowed, as opposed to advising him of the disallowance after he has filed his return and claimed the deduction. Nor is Section 6103(a) the proper remedy available to a tax shelter promoter who complains that the IRS, prior to any formal proceedings declaring its shelter abusive, disallows deductions claimed by taxpayers who invest in its shelter.

Section 6103 contemplates that the IRS be able to disclose to taxpayers information with respect to their own returns. *See* 26 U.S.C. §§ 6103(e)(1) and (7). In essence, that is precisely what occurred here.

The judgment of the district court is reversed, and this cause is remanded to the district court with instructions to enter judgment for defendant.

MERRITT, Circuit Judge, concurring in the judgment.

Although I disagree with the reasoning of the court in this case, I agree with the result it reaches. Accordingly, I write separately to explain the narrow basis on

---

1. Such return could hardly have been the subject of a "review" by IRS without its having been examined, and "indications" that the tax shelter

provided for disallowable deductions implied that "other investigation or proceeding" would ensue in the wake of those "indications."

which I would uphold the prefiling notification program at issue in this case.

The information disclosed by the IRS to Mid-South's individual investors was plainly the "return information" of Mid-South as that term is used in 26 U.S.C. § 6103(b)(3) (1982). In *In re Grand Jury Investigation,* 688 F.2d 1068 (6th Cir.), *reh. denied,* 696 F.2d 449 (1982), we held that "[a] taxpayer's name and the fact that he is, or will be subject to an investigation regarding Title 26 obligation, does constitute return information." 688 F.2d at 1071. The letter at issue in this case identified Mid-South as a taxpayer and the fact that Mid-South was under investigation by the IRS. This clearly falls within the definition of tax return information given in *In re Grand Jury Investigation, id.* The IRS is thus subject to liability for this disclosure unless it falls within one of the statutory exceptions which permit disclosure in certain limited circumstances.

Section 6103 permits the IRS to disclose the tax return information of a taxpayer to the taxpayer himself unless such disclosure would seriously impair federal tax administration. 26 U.S.C. § 6103(e)(1)(A)(i), (e)(7) (1982). Thus, if the information contained in the prefiling notification letter is deemed to be the "return information" of the investors to whom the letters were sent, the disclosure is proper.

The definition of return information in § 6103 includes, among other things, all data collected by the IRS with respect to the tax liability of an individual. 26 U.S.C. § 6103(b)(2) (1982). The information revealed by the IRS to the Mid-South investors-lessees in the prefiling notification letter was compiled from the "pass through documents" that Mid-South was to file with its tax return. The pass through document is a form whereby parties to a lease elect to permit the investment tax credit to be passed from the lessor to the lessee, and a copy of the form must be filed with the lessor's and the lessee's income tax return. As such, the pass through documents contained data collected by the IRS concerning the tax liability of *both* Mid-South and the individual lessees. Consequently, the information contained in the pass through documents, and compiled into the prefiling notification letters, is the "return information" of both Mid-South and the lessees as that term is defined by § 6103(b)(2).

The prefiling notification letters were only sent to the lessees themselves. The letter contained the "return information" of the lessees. Therefore, as the letters merely disclosed the "return information" of the lessees *to the lessees,* disclosure was permissible under § 6103. 26 U.S.C. §§ 6103(e)(1)(A)(i), (e)(7) (1982). This is the only basis on which I concur in the result reached by the court.

WELLFORD, Circuit Judge, concurring.

I concur in the decision of Judge Norris, and would add an additional basis for reversing the district court.

In *First Western Government Securities, Inc. v. United States,* 796 F.2d 356, 357 (10th Cir.1986) the investors of the abusive tax shelter *were* under investigation by the IRS when they received a revenue agent report containing alleged return information of First Western Government Securities, Inc. The court held 26 U.S.C. § 6103(h)(4)(C) applicable because "the information is directly related to a transactional relationship between the investors and plaintiffs and directly affected the resolution of an issue in the proceeding, that being the disallowance of deductions related to plaintiffs' tax shelters." Id. at 360. The court also noted that the "term 'tax administration' is to be interpreted broadly." *Id.* I believe the rationale of *First Western* is applicable in this situation even if the investors in Mid-South may not themselves have been under investigation when they received the prefiling notification letter. Section 6103 "cannot be read to provide a general right of privacy to anyone called upon to submit information to the IRS," particularly under the circumstances of the IRS investigation in this case. *Id.* at 359.

The information here directly relates to a "transactional relationship" between Mid-South Music and the recipients of the letter in question.

I agree that the judgment of the district court must be reversed.