**BALANCED FINANCIAL MANAGEMENT, INC.,**
Plaintiff,

v.

**Carol M. FAY, District Director, et al., Defendants.**

No. 86–C–0682S.

United States District Court,
D. Utah, C.D.

June 2, 1987.

---

John J. Borsos, Salt Lake City, Utah, for plaintiff.

Brent D. Ward, U.S. Atty., Kathleen B. Barrett, Asst. U.S. Atty., Salt Lake City, Utah, Michael J. Kearns, Trial Atty., Tax Div., Washington, D.C., for defendants.

### DECISION

SAM, District Judge.

Plaintiff Balanced Financial Management (BFM) brought this action against defendants the United States, the Internal Revenue Service (IRS) and the District Director of the IRS. The matter was first heard by the Magistrate on the parties' cross motions for summary judgment, and is now before the court on BFM's objection to the Magistrate's report and recommendation that summary judgment be granted for the Government.

### I. *The uncontroverted facts*

BFM is an Arizona corporation with its principal place of business in Utah. Jarelco, Inc. is a Texas corporation with its principal place of business in Texas. During the period in question, BFM acted as an independent sales agent for Jarelco in the sale of a master audio recording tax shelter promoted by Jarelco. The master audio tape recordings were to be 15 minutes in length, and contain educational and entertainment material for children. Jarelco purchased the master recordings for $195,000 each, by paying $3,000 cash with the $192,000 balance payable under the terms of a ten-year promissory note. Jarelco then leased the masters to investors-lessees through various sales agents, including BFM, and each investor-lessee paid $10,000 or $12,000 to lease the master recording for six years. Jarelco promoted the products heavily by promising to pass on to the investors-lessees an investment tax credit to which Jarelco claimed it was entitled. For example, Jarelco represented that an investor-lessee in the 50% tax bracket would be entitled to a first-year savings of $23,000 in return for the total cash investment of $12,000 to lease one master recording.

On September 30, 1983, the IRS began investigating the Jarelco tax shelter in the Dallas District to determine whether penalties should be imposed under 26 U.S.C. § 6700 or whether the promotion of the tax shelter should be enjoined under 26 U.S.C. § 7408. The IRS concluded the master recordings were grossly overvalued,[1] no tax

---

1. The Salt Lake City District obtained an initial appraisal showing the recordings had fair market value of $25,000 each, and a second apprais- al showing a random selection of thirty recordings had fair market values ranging between $700 and $2000 each.

credit could be passed to the investors-lessees and, consequently, the tax shelter was abusive. As a result of its suit for injunction under section 7408, the Government obtained a consent judgment in which Jarelco and its Texas sales agent agreed to discontinue promotion of the master recording tax shelter.

By letter dated December 15, 1983 and clarified by letter dated January 17, 1984, the Salt Lake City District of the IRS informed BFM that its promotion of the Jarelco tax shelter was under investigation to determine whether a section 6700 penalty or section 7408 injunction should be imposed against BFM. During the investigation, the following items were among those subpoenaed: a list of BFM stockholders; a list of BFM salespeople; previously filed copies of IRS forms, including income and employment tax returns; and a list of all investors in each tax shelter program sold or promoted by BFM. BFM claims it was also under audit at that time.

On August 13, 1984, the Salt Lake City District mailed pre-filing notification letters (PFNs) to 1,768 taxpayers identified on BFM's list of investors in Jarelco tapes. The letters identified the tax shelter in question as "Balance [sic] Financial Management—Jarelco Tapes," and informed investors that, after reviewing the shelter, the IRS intended to disallow any deductions or credits claimed for investment in it.[2] On September 30, 1985, the Government filed a civil action in this court against BFM, its president and several salesmen, seeking to enjoin the further promotion of the Jarelco tax shelter. A consent judgment barring BFM from promotion or sale of the tax shelter was obtained on September 30, 1985.

The issue raised in the parties' cross-motions for summary judgment is whether the PFNs disclosed "return information" concerning BFM, in violation of 26 U.S.C. § 6103. BFM asserts its return information was revealed in the PFN by the identification of BFM and by the statement that the IRS examination of the BFM–Jarelco tax shelter resulted in its determination no deductions or credits would be allowed for its investors. The Government counters the PFN did not contain proscribed return information because the reference to BFM was included solely to identify the shelter in question, and the PFN did not refer to BFM's status as a taxpayer. The Government further asserts that even if the PFNs disclosed return information, the disclosure was authorized under 26 U.S.C. §§ 6103(e)(1)(A) and (7) because the PFN contains information related to the tax return filed by the investor-lessee, and the investor-lessee may inspect his own return unless the inspection would seriously impair federal tax administration. Disclosure of the return information is also authorized under section 6103(h)(4)(C) because the PFN is the first step in an administrative proceeding relating to tax administration, that is, the audit of the investors-lessees'

2. The PFN reads as follows:
  Date:
  Tax Shelter Promotion: Balance Financial Management-Jarelco Tapes
  Tax Year: 1983
  Person to Contact: Duane Olsen
  Contact Telephone Number: (801) 524–4483
    Our information indicates that you invested in the above tax shelter during the above tax year. Based upon our review of that promotion, we believe that the purported tax deductions and/or credits are not allowable.
    We plan to review your return to determine whether you claimed such deductions and/or credits. If you did so, we will examine your return and reduce the promotion of any refund due to you which is attributable to the above tax shelter promotion. If an examination results in adjustments to your return, you will be afforded the opportunity to exercise your appeal rights. The Internal Revenue Code provides, in appropriate cases, for the application of the negligence penalty under section 6658(a), the overvaluation penalty under section 6659 and/or the substantial understatement of income tax penalty under section 6661 of the Internal Revenue Code and other appropriate penalties. Our examination will determine whether these penalties are appropriate. See the attachment to this letter for the explanation of these penalties.
    If you claimed deductions and/or credits on a return already filed, you may wish to file an amended tax return. If so, please file such at the following address:
  Internal Revenue Service Center
  Attention: Pre-filing Notification Coordinator
    Sincerely yours,
    District Director

returns. Finally, the Government contends it is not subject to liability because it issued the PFNs under an IRS regulation, and is entitled to a good faith defense.

After review of the cross-motions, the Magistrate concluded the PFNS do not contain return information because BFM was named only to identify a tax shelter; no information about BFM's tax liabilities was disclosed; and the PFNs state the promotion, not BFM as a taxpayer, was under review.

## II. *Summary Judgment*

■ Under Fed.R.Civ.P. 56(c), summary judgment is appropriate when the record shows "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The movant must show entitlement beyond a reasonable doubt, and summary judgment is appropriate only where there is no indication the non-movant might recover. *Ewell v. United States,* 776 F.2d 246, 249–50 (10th Cir.1985). Summary judgment is mandated if "after adequate time for discovery and upon motion, ... a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Pleadings are to be construed liberally in favor of a party opposing a Rule 56 motion. *Harman v. Diversified Medical Investment Corp.,* 488 F.2d 111 (10th Cir.1973), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976).

## III. *Return information under 26 U.S.C. § 6103*

Section 6103(a) of the Internal Revenue Code states that tax returns and return information are confidential and may not be disclosed by officers and employees of the United States or other named individuals who have access to the information except as authorized by Title 26. Return information is defined in section 6103(b)(2) as follows:

(2) *Return Information.* The term 'return information' means—

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other date, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

(B) any part of any written determination or any background file document relating to such written document relating to such written determination ... which is not open to public inspection under section 6110, but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer....

Violation of that statute gives rise to a civil suit for damages as described in 26 U.S.C. §§ 7431(a)(1) and (c):

(1) *Disclosure by employee of the United States.* If any officer or employee of the United States knowingly, or by reason of negligence, discloses return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

. . . .

(c) *Damages.*—In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—

(1) the greater of—

(A) $1,000 for each act of unauthorized disclosure of a return or return

information with respect to which such defendant is found liable, or

(B) the sum of—

(i) the actual damages sustained by the plaintiff as a result of the unauthorized disclosure, plus

(ii) in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, plus

(2) the costs of the action.

■ Several courts have considered what constitutes return information under section 6103. In *First Western Government Securities, Inc. v. United States,* 796 F.2d 356 (10th Cir.1986), the Tenth Circuit affirmed the district court's determination that the IRS did not improperly disclose the plaintiff's return information by adding a sentence stating the plaintiff invoked the fifth amendment, to the previous notification received by investors that credits or deductions related to that tax shelter would be disallowed. The major distinction between *First Western* and the instant case is that the information in *First Western* was obtained from the returns of the investors, and the plaintiff was approached merely as a third party to provide information concerning an investigation of his customers. Here, the information that lead to the IRS determination the Jarelco tax shelter was abusive was not obtained from the returns of the investors-lessees, but rather, from the Dallas District investigation and the materials subpoenaed from BFM, including past BFM returns. Apparently, BFM was also under audit when the PFNs were sent. This court considers the source of the data upon which the PFN is based highly relevant to the decision whether return information was disclosed. *Mid-South Music Corp. v. Kolak,* 756 F.2d 23, 25 (6th Cir.1984) (*Mid-South I*) (Colorable

claim arose because the PFN revealed the plaintiff's identity as a taxpayer and that it had been under IRS investigation, since the investors' names were allegedly obtained through that investigation, a fact first revealed to the investors upon receiving the PFN.).[3] However, the Tenth Circuit held that even if the PFN disclosed return information, the disclosure would be permitted under 26 U.S.C. § 6103(h)(4)(C) because "the information is directly related to a transactional relationship between the investors and plaintiffs and directly affected the resolution of an issue in the proceeding, that being the disallowance of deductions related to plaintiff's tax shelters." *First Western,* 796 F.2d at 360. Section 6103(h)(4)(C) states:

Disclosure in judicial and administrative tax proceedings. A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—

. . . .

(C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; ...

The Court agreed with the district court's conclusions that the audit of the investors is an administrative proceeding relating to tax administration and that the disclosed information concerns a transactional relationship between the plaintiffs and the investors to whom the PFN was sent. The district court reasoned the information directly affects the resolution of an issue in the proceeding, that is, the disallowance of deductions related to the plaintiff's tax shelters.[4] Underscoring that reasoning, the Tenth Circuit observed,

**3.** In *Mid-South,* the Sixth Circuit rejected the argument the IRS abridged the plaintiff's due process rights by sending the PFN, and held the plaintiff failed to show the action directly deprived him of a property interest. However, the Court remanded the issue of alleged violation of the non-disclosure provisions in section 6103 with the instructions to reconsider the claim under 26 U.S.C. § 7431(a)(1) and to examine

possible exceptions under section 6103(e)(7) and other similar provisions. The Court's opinion on appeal from the remand decision is discussed below. For purposes of this decision, the first Circuit Court opinion will be denominated *"Mid-South I,"* and the second, *"Mid-South II."*

**4.** The Tenth Circuit rejected the argument of the *First Western* plaintiff that section 6103(h)(4)(C)

[t]he IRS is required to provide a taxpayer with an examiner's report. *See* 26 C.F.R. § 601.105. The IRS necessarily is authorized to report all pertinent information to buttress its conclusions provided such information directly affects the resolution of an issue in the proceeding. *First Western*, 796 F.2d at 361.

Unlike the present information, the *First Western* information was obtained directly from the audits of the investors themselves, and the question whether the PFN contained the return information of the plaintiff is more clear-cut there than in this case. However, the IRS extends that argument to the present case by asserting the PFN is the first step in the audit of the investors-lessees, and therefore, the information that credits or deductions related to the Jarelco tax shelter would be disallowed is disclosable under section 6103(h)(4)(C).

For further guidance on these questions, this court turns to a case recently decided in the Sixth Circuit on facts nearly identical to the instant facts. In *Mid-South Music Corp. v. United States*, 818 F.2d 536 (6th Cir.1987) (*Mid-South II*), the Court reversed the district court's decision, reached on remand of the section 6103 claim, that a PFN similar to the instant PFN amounted to an unlawful disclosure of return information. The district court's second examination of the facts resulted in its holding that the IRS' inclusion in the PFN of the plaintiff/promoter's name and the fact it had been investigated breached the confidentiality of the plaintiff's return by disclosing prohibited return information. The court awarded the plaintiff costs as well as compensatory and punitive damages, reasoning that "the IRS acted in bad faith in sending [the PFN] for the intended purpose of destroying the tax shelter promotion of Mid-South before its abusiveness was established as a matter of law." *Mid-South Music Corp. v. United States*, 85–2 U.S. Tax Cas. par. 9782 (M.D.Tenn.1985) [Available on WESTLAW, DCT database].[5]

In its review of the remand decision, the *Mid-South II* Court begins its analysis by pointing out the plaintiff relied solely on the PFN as its evidence to support the claim it had been the victim of unlawful disclosure. The Court then focused on the threshold question whether the PFN contained return information under section 6103, saying that if it did not, the issues of motive and attitude relevant to damages would be irrelevant to liability. Concerning the return information question, the Court stated:

> The letter identifies plaintiff as a promoter of tax shelters, and advises investors that the IRS has reviewed plaintiff's promotion of tax shelters and will disallow deductions taken in reliance upon plaintiff's tax shelter promotion. There is no indication that plaintiff's tax returns were being examined or subjected to investigation. *See In re Grand Jury Investigation*, 688 F.2d 1068, 1971 (6th Cir. 1982).
>
> The letter is not subject to the criticism that it is simply a cleverly worded attempt to evade the 'spirit' of the disclosure prohibition. Under the circumstances of this case, we are hardpressed to discern the evil to be guarded against which would prevent the IRS from advising a taxpayer-investor, in advance of his filing of his income tax return, that a deduction will be disallowed, as opposed to advising him of the disallowance after he had filed his return and claimed the deduction. Nor is Section 6103(a) the proper remedy available to a tax shelter promoter who complains that the IRS,

*First Western*, 796 F.2d at 360.

permits disclosure of return information to federal officials only, saying:
> There is no indication within the legislative history that section 6103(h)(4)(C) was to be limited only to disclosure to certain federal employees. Rather, it appears the intent of section 6103(h)(4)(C) was to allow disclosure in judicial or administrative tax proceedings in general, provided that the requirements of the various subsections are met.

**5.** This court notes the district court's holding centers on what amounts to the due process argument rejected in *Mid-South I*. In *Western Reserve Oil & Gas Corp. v. New*, 765 F.2d 1428 (9th Cir.1985), the Ninth Circuit followed *Mid-South I* by concluding that issuance of a PFN does not impinge upon any constitutionally recognized liberty or property interest.

prior to any formal proceedings declaring its shelter abusive, disallows deductions claimed by taxpayers who invest in the shelter.

Section 6103 contemplates that the IRS be able to disclose to taxpayers information with respect to their own returns. *See* 26 U.S.C. §§ 6103(e)(1) and (7). In essence, that is precisely what occurred here.

*Mid-South II*, 818 F.2d at 539. Judge Merritt, in a concurring opinion, disagrees with the Court's position that the PFNs do not contain return information; however, he concludes the PFNs contain return information of both Mid-South Music and the lessees that is properly disclosable under sections 6103(e)(1) and (7). In his concurrence, Judge Wellford provides an additional basis for reversing the district court by applying the *First Western* "transactional relationship" analysis under 26 U.S.C. § 6103(h)(4)(C) to the *Mid-South* investors, even though the investors themselves might not have been under investigation when they received the PFNs. Judge Wellford refers to the Tenth Circuit's language that the term "tax administration" should be construed broadly, and reasons the information at issue was properly disclosable because it directly related to a "transactional relationship" between Mid-South Music and its investors.

■ BFM also relies solely on the PFN as evidence of unlawful disclosure, and this court agrees with the *Mid-South II* holding that the PFN's identification of the plaintiff and reference to investigation of the Jarelco tax shelter primarily served to notify the investor-lessee his claims for deductions or credits would be disallowed, and is not return information under section 6103. Notification was accomplished without disclosing information regarding the BFM return or any of its other tax shelters. The court also finds persuasive the concurring opinions in *Mid-South II*, the essence of which is that regardless of whether the PFNs contain information that technically meets the section 6103 definition of return information, that information is properly disclosable under section 6103 exceptions. Thus, for the reasons set out in *Mid-South*

*II*, the court concludes the subject information regarding BFM is disclosable under 26 U.S.C. §§ 6103(e)(1) and (7) and (h)(4)(C).

IV. *The good faith defense under 26 U.S.C. § 7431(b)*

The court notes that after the initial *Mid-South* district court decision, the IRS issued Rev.Proc. 83–78, 1983–2 Cum.Bull. 595, which sets out procedures for the identification and investigation of abusive tax shelters, including the sending of PFNs to inform investors no deductions or credits for investment in the referenced tax shelter would be allowed. Section 7431(b), 26 U.S.C., provides: "No liability shall arise under this section with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103." Where the subject PFNs were issued in compliance with that regulation, the court determines they were sent in good faith, and BFM has no claim for liability against the Government.

There being no material facts in controversy and no basis upon which BFM can recover, the court denies BFM's Motion for Summary Judgment, and grants summary judgment for the Government.