**SOLARGISTIC CORPORATION and Geodesco, Inc., Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 89–3576.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1990.

Decided Jan. 11, 1991.

Sheldon H. Smith, Englewood, Colo., Andrew L. Quiat, Denver, Colo., for plaintiffs-appellants.

James J. Kubik, Asst. U.S. Atty., Chicago, Ill., Gary R. Allen, Jonathan S. Cohen, William A. Whitledge, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for defendant-appellee.

Before POSNER and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

This is an appeal from the grant of summary judgment in favor of the defendant, United States. The presence of a federal question provides the basis for subject matter jurisdiction. *See* 28 U.S.C. § 1331. The question presented is whether the United States improperly disclosed the plaintiffs' "return information" in violation of 26 U.S.C. § 6103. We agree with the District Court's conclusion that any alleged disclosure was authorized by a statutory exception to § 6103 and affirm the decision below.

### FACTUAL BACKGROUND

The seeds of this lawsuit lie in an Internal Revenue Service ("IRS") investigation

of a tax shelter. The plaintiff Solargistic Corporation ("Solargistic") purchased solar energy equipment which it then sold to customers/investors ("investors"). The investors could then opt to lease the equipment to the plaintiff Geodesco, Inc. ("Geodesco"), which would place the devices with end users. These sale/leaseback transactions were designed to provide the investors with substantial income tax deductions and credits.

For reasons that are unimportant to our decision, the IRS suspected these solar energy investments did not entitle the investors to the claimed income tax deductions and credits. On November 7, 1986, the IRS mailed a letter[1] to the investors that said in part:

> Dear Taxpayer(s):
>
> You have been identified as a partner/investor in Solargistics [sic] which is under audit by the IRS. Any adjustments made to that return/promotion will affect your tax return.
>
> We are contacting you because it is necessary for us to secure a copy of the return filed by you for the year(s) 1985. If you have filed a return, please mail us a copy. If you did not file a return, please furnish us with the reasons for not filing.

By stating in this letter that Solargistic was under audit, the IRS disclosed what we will assume for purposes of this appeal is "return information" of Solargistic. *See* 26 U.S.C. § 6103(b)(2)(A) (including within the

definition of "return information" the fact that "the taxpayer's return was, is being, or will be examined"). Solargistic filed suit seeking damages under 26 U.S.C. § 7431(a)(1) for the alleged wrongful disclosure of this return information in violation of 26 U.S.C. § 6103. The District Court granted the government summary judgment, concluding the disclosure at issue was not wrongful because it was excepted from § 6103 prohibition. We affirm. Although the fact of the IRS audit might be the return information of Solargistic it is also the return information of the investors who received the letter.

## DISCUSSION

Solargistic's suit arises under 26 U.S.C. § 7431(a)(1), which enables taxpayers to sue for damages caused by violations of 26 U.S.C. § 6103. Section 6103(a) prohibits employees of the government from disclosing any return information unless the disclosure is authorized by an exception. For a taxpayer to prevail, the evidence must establish that return information was disclosed and that no exception applies to exempt the disclosure from the confidentiality protections of § 6103. The District Court granted the United States summary judgment based on the conclusion that the disclosure here was authorized by the exception for disclosure of return information to the taxpayer himself (§ 6103(e)(1), (7)).[2] We agree.

"Return information" is defined as:

---

**1.** In addition to the letter at issue here, the parties also agree the IRS mailed four other letters to the investors and issued press releases to two newspapers. The plaintiffs' complaint seeks damages for these disclosures as well as damages for the November 7 letter. The District Court granted the government summary judgment on the plaintiffs' complaint to the extent it seeks damages for any of the letters or press releases. However, the plaintiffs have only appealed the District Court's judgment with respect to the November 7 letter, which was Government Exhibit 6 at trial. These other alleged disclosures are thus not at issue before us. The November 7 letter refers only to Solargistic, so Geodesco has no basis for participation in this appeal. It cannot be said that Geodesco was aggrieved by the District Court's judgment. *See Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 333–34, 100 S.Ct. 1166, 1171–72, 63 L.Ed.2d

427 (1980); *Principal Mut. Life Ins. Co. v. Cincinnati TV 64 Ltd. Partnership,* 845 F.2d 674, 677 n. 1 (7th Cir.1988). Geodesco's appeal is accordingly dismissed.

**2.** The District Court also concluded that § 6103(h)(4)(C) (allowing disclosure in an administrative proceeding) shelters the IRS from liability in this case. Concluding either of the two exceptions applicable, the District Court declined to decide the initial issue whether the November 7 letter disclosed the "return information" of Solargistic. We agree with the District Court that, assuming the letter disclosed Solargistic's return information, it also disclosed return information of the investors to the investors. We therefore do not decide whether § 6103(h)(4)(C) applies to this case.

[A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, over-assessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, *or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary [of the IRS] with respect to a return or with respect to the determination of the existence, or possible existence, of liability* (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition or offense,....

26 U.S.C. § 6103(b)(2)(A) (emphasis added).

Although the IRS is, in general, admonished to maintain the confidentiality of return information, § 6103(e)(7) provides that a taxpayer's return information is open to inspection by any person authorized to inspect that taxpayer's tax return. Section 6103(e)(1)(A)(i) permits an individual to inspect his own tax return. The interplay between these two provisions enables the IRS to disclose the return information of an individual to that individual. *See Mid-South Music Corp. v. United States*, 818 F.2d 536, 540 (6th Cir.1987) (Merritt, J., concurring).

We believe, as did the District Court, that the disclosure here falls within this exception. The IRS disclosed to the investors that Solargistic had been audited. These letters were mailed as the initial step to adjusting the tax liability of the investors for the year in question. The resolution of the audit would directly impact the investors' taxes payable, and the letter says as much—"[a]ny adjustments made to that return/promotion will affect your tax return." The fact of the Solargistic audit is therefore "data ... prepared by ... the Secretary ... with respect to the determination of the ... possible existence" of any tax liability of the investors. 26 U.S.C. § 6103(b)(2)(A). As such, the fact of the audit is the "return information" of each Solargistic investor. *See Mid-South*, 818 F.2d at 540 (Merritt, J., concurring); *Balanced Fin'l Mgmt., Inc. v. Fay*, 662 F.Supp. 100, 106 (D.Utah 1987).[3]

Only this construction of § 6103 will enable the IRS to go about its business. In order to adjust the returns of the individuals who have invested in tax shelters found to be suspect, the IRS must be permitted to inform those individuals of the facts underlying the adjustment. Elsewise, these investors would merely be told that an adjustment to their returns might be warranted, but they would not be told why. Section 6103 could not possibly intend such a result and to read the section otherwise would likely handcuff the enforcement arms of the IRS.[4]

---

**3.** We recognize that our holding, at first blush, renders certain other provisions of § 6103(e) superfluous. We hold that an individual may, through subsection (e)(1)(A), inspect the return information of another taxpayer based on the conclusion that the return information is also the return information of the inspecting individual. Therefore, a partner in a partnership or a shareholder in a small business corporation ("S corporation") may use subsection (e)(1)(A) to discover the return information of the partnership or the S corporation. Because these are merely "pass through" entities, the return information of both partnerships and S corporations is most certainly the return information of the partners and shareholders. The interpretive problem is that subsection (e)(1)(C) specifically enables a partner to inspect the partnership information and subsection (e)(1)(D)(v) authorizes a shareholder to inspect the S corporation information. Under our holding, these two provisions are arguably unnecessary. *See Martin v.*

*Internal Revenue Serv.*, 857 F.2d 722, 726 (10th Cir.1988). We believe, however, the more specific authorizations of (e)(1)(C) and (e)(1)(D)(v) are simply examples of what the general authorization allows.

**4.** Of course almost every dispute exposes conflicting policy arguments that counsel the dispute's resolution. This case is no different. We recognize that authorizing the disclosure here might, in some extreme cases, enable the IRS to send prefiling notification letters "for the intended purpose of destroying the tax-shelter promotion ... before its abusiveness [is] established as a matter of law." *Mid-South*, 818 F.2d at 539 (quoting the District Court's findings). However, we believe such cases on the extreme edge do not warrant stripping the IRS of its ability to communicate with the taxpayers. We also recognize that a broad reading of § 6103(e)(1)(A) might authorize, under the Freedom of Information Act (5 U.S.C. § 552),

Because the information disclosed here was the return information of the investors, the disclosure was authorized under § 6103(e)(1), (7). The opinion of the District Court is AFFIRMED.

certain individuals to inspect return information that they previously could not obtain. However, our opinion does not spell the doom of the confidentiality protections of § 6103. Even though an individual might seek to inspect his own return information, the IRS must only comply if it first determines "that such disclosure would not seriously impair Federal tax administration." 26 U.S.C. § 6103(e)(7). On balance, we believe the policies underlying our opinion are of greater weight than the policies that point to the opposite result.