**NORMAN E. DUQUETTE, INC., and Norman E. Duquette, Plaintiffs,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Defendant.**

**No. Civ.A. 99–0580(PLF).**

United States District Court, District of Columbia.

Aug. 25, 2000.

Matthew S. Simchak, Eric W. Leonard, Wiley Rein & Fielding, Washington, DC, for plaintiffs.

Christopher J. Kayser, Trial Attorney, Tax Division, U.S. Dpt. of Justice, Washington, DC, for defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This case was brought by plaintiffs Norman E. Duquette and Norman E. Duquette, Inc. ("NEDI") under 26 U.S.C. §§ 6103 and 7431 of the Internal Revenue Code. Section 6103 prohibits the disclosure of tax returns and tax return information except as otherwise authorized by the Internal Revenue Code. Section 7431 creates a cause of action for damages for a taxpayer whose tax return or return information is disclosed in violation of Section 6103.

Plaintiffs Norman Duquette and NEDI assert that the Internal Revenue Service disclosed tax return information about NEDI to Mr. Duquette's former wife, Aline Duquette, in violation of Section 6103. The IRS maintains that the disclosures were authorized under Section 6103; that even if they were not authorized, they were the result of a good faith but erroneous interpretation of Section 6103; and that Mr. Duquette (but not NEDI) lacks standing to prosecute this action. Plain-

tiffs seek compensatory damages, punitive damages, attorneys' fees and costs.

The matter is now before the Court on the motion of the IRS for summary judgment. The Court heard oral argument on August 16, 2000. Upon consideration of the motions papers, declarations and exhibits filed by the parties and the arguments of counsel, the Court concludes that there are no genuine issues of material fact and that the IRS is entitled to judgment as a matter of law. Defendant's motion for summary judgment will be granted.

## I. BACKGROUND

On November 6, 1995, IRS Revenue Agent Pat Grimes was assigned to audit the joint federal tax returns of Norman and Aline Duquette for tax years 1992 and 1993, as well as the corporate tax returns of NEDI for the same years. Declaration of Pat Grimes ("Grimes Decl.") ¶ 1. On May 15, 1996, Agent Grimes notified NEDI that its 1992 and 1993 corporate tax returns had been selected for examination. *Id.* ¶ 3. The audits for both the personal and corporate returns were assigned to the same agent because "the individual and corporate tax liability were interrelated for the 1992 and 1993 tax years." *Id.* ¶ 5. Mr. and Mrs. Duquette were 50 percent shareholders, officers and members of the board of directors of NEDI for the relevant tax years. *Id.* ¶ 6. The purpose of the individual and corporate audits was to determine whether NEDI had been used by the Duquettes to pay for personal expenses (including costs for furniture, clothes, condo association fees, prescriptions, books, magazine subscriptions, a vacuum, dry cleaning, cable TV fees, the cost of maintaining two cars, certain travel expenses, etc.) and whether those expenses should be treated as income to the Duquettes in the form of constructive dividends from NEDI. *Id.* ¶¶ 7–8.

In July 1996, the Duquettes divorced. Under the terms of the divorce, Mr. Duquette became the sole owner of NEDI and Mrs. Duquette surrendered all professional and financial ties to the corporation. According to plaintiffs, Mrs. Duquette and Agent Grimes had a telephone conversation on March 26, 1997, in which Agent Grimes provided Mrs. Duquette with tax liability information, requested information about NEDI's business practices, and informed Mrs. Duquette that NEDI probably (or definitely) had a tax deficiency for tax years 1992 and 1993. Declaration of Norman E. Duquette ("Duquette Decl.") ¶¶ 1–5 and Exhibits 4, 5, 7. Information gained by Mrs. Duquette through the telephone call was subsequently used in the Duquettes' divorce property settlement proceedings, allegedly to Mr. Duquette's disadvantage. *Id.* ¶¶ 7–8, 41.[1]

Agent Grimes ultimately concluded that the deductions taken by NEDI were in fact personal expenses, that they should be treated as constructive dividends to Mr. and Mrs. Duquette, that NEDI's deductions for the personal expenses should be denied and its tax liability readjusted, and that the Duquettes' total joint tax liability should be increased accordingly. Grimes Decl. ¶ 9.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is

---

**1.** For purposes of this motion, defendant accepts all of these facts as true.

to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. U.S. Dept. of Health and Human Services*, 865 F.2d 320, 325 (D.C.Cir.1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C.Cir. 1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50.

### III. THE DISCLOSURE WAS PERMISSIBLE UNDER 26 U.S.C. SECTION 6103

Section 6103(a) of the Internal Revenue Code renders all returns and return information confidential with certain specified exceptions. The term "return information" is broadly defined to include:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty,

interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A).

The IRS agrees that the information provided to Mrs. Duquette fits within the above definition, but asserts that a specific exemption exists in Section 6103(h)(4) of the Code that permits such return information to be disclosed in a situation such as this one. Section 6103(h)(4) provides, in part:

> A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration . . .
>
> > (B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding; [or]
> >
> > (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding . . .

26 U.S.C. § 6103(h)(4)(B), (C). Under this provision of the Code, two requirements must be met in order to fall within the exception to the general rule that tax returns and return information shall not be disclosed: (1) the disclosure must have been made in a judicial or administrative proceeding; and (2) the treatment of an item on the return must either directly relate to the resolution of an issue in the proceeding, or a transactional relationship between a party to the proceeding and the taxpayer must directly affect the resolution of an issue in the proceeding. In addition, of course, the administrative proceeding must actually be under way when the disclosure is made.

Defendant argues (1) that the audit of the Duquettes' personal tax returns was an administrative proceeding, and (2) that their personal tax returns were directly affected by the outcome of the audit of the corporate returns. Specifically, defendant

argues that the Duquettes' joint tax liability was directly affected by the deductions that NEDI took on its tax returns because of their status as shareholders: "If the IRS deems the deductions as personal rather than for a business expense those deductions will be disallowed to the corporation and payment of the expenses will be treated as constructive dividends to the shareholders, Aline and Norman Duquette." Memorandum in Support of Defendant's Motion for Summary Judgment at 8.

### A. First Prong: Disclosure During Administrative Proceeding

Although Section 6103 does not define "administrative proceeding," the Tenth Circuit has held that an "audit falls within the definition of a proceeding pertaining to tax administration." *First Western Government Securities, Inc. v. United States,* 796 F.2d 356, 360 (10th Cir.1986); *see Nevins v. United States,* 1987 WL 47316, at *3 (D.Kan.1987) (same). The Tenth Circuit's reading of Section 6103(h)(4) conforms with the view held by most courts that when determining whether an administrative proceeding pertains to tax administration, the term "tax administration" should be read broadly. *See First Western Government Securities, Inc. v. United States,* 796 F.2d at 360; *Mid–South Music Co. v. United States,* 818 F.2d 536, 540 (6th Cir. 1987) (Welford, J., concurring) (adopting *First Western* rationale); *Balanced Financial Management v. Fay,* 662 F.Supp. 100, 106 (D.Utah 1987) (finding that Section 6103(h)(4) applied to IRS examination of abusive tax shelter); *Datamatic Services Corp. v. United States,* 1987 WL 28603, at *4 (N.D.Cal.1987) (same). The only court expressly to hold otherwise is the Fourth Circuit, which has narrowly interpreted the term "administrative proceeding" to exclude tax audits. *See Mallas v. United States,* 993 F.2d 1111, 1122–23 (4th Cir.1993). Defendant urges the Court to follow the former view, while plaintiffs argue that only the Fourth Cir-

cuit got it right and this Court should apply its interpretation.

■ The Court will adopt the majority position that Section 6103(h)(4) should be interpreted broadly because the Fourth Circuit's interpretation would lead to results clearly unintended by the drafters of Section 6103. In this case, if the IRS ultimately found that the expenses were personal in nature and that a constructive dividend was warranted, and if under plaintiffs' and the Fourth Circuit's interpretation of Section 6103 the IRS was prohibited from disclosing NEDI tax return information to Mrs. Duquette during the audit of her personal tax returns, she would have no way of knowing why her personal tax liability was being or might be adjusted. If an audit is not an "administrative proceeding" and therefore the exception in Section 6103(h)(4) does not apply, the broad definition of "tax return information" in Section 6103(b)(2) would prevent the IRS from informing Mrs. Duquette of virtually anything about why she was being charged with a constructive dividend and her tax liability was being increased. Surely such an illogical result was not intended.

### B. Second Prong: Relation of NEDI's Tax Return Information to Resolution of an Issue in Audit of Duquettes' Joint Tax Returns

The second prong of the Section 6103(h)(4) exception to the general prohibition against disclosure of tax return information requires that a "direct relationship" exist under one of two tests, the "item test" or the "transactional relationship test." The item test requires that the treatment of an item on the return directly relate to the resolution of an issue in the proceeding, 26 U.S.C. § 6103(h)(4)(B), while the transactional relationship test requires that a transactional relationship between a party to the proceeding and the taxpayer directly affect the resolution of

an issue in the proceeding. 26 U.S.C. § 6103(h)(4)(C).[2]

■ Here, defendant argues that under the item test, the treatment of an item reflected on the 1992 and 1993 tax returns of NEDI was necessarily and directly related to an issue in the audit of the Duquettes' joint income tax returns for 1992 and 1993. The primary purpose of the NEDI audit was to determine whether certain corporate deductions should be denied because they related to personal expenses of the Duquettes' rather than to business expenses of the corporation. The audit of the individual returns involved the identical inquiry. If the expenses of the corporation were indeed personal, then the Duquettes, in their capacity as shareholders, would be charged with constructive dividends which would in turn increase their gross income and affect their personal tax liability for 1992 and 1993. The Court therefore agrees with the defendant that the disclosure was authorized under Section 6103(h)(4)(B). An item on NEDI's return (the improper deduction of the Duquettes' personal expenses as business expenses) is directly related to an issue in the audit of the Duquettes' personal returns for 1992 and 1993 (the constructive dividends).

### C. There Is No Genuine Issue Of Material Fact

Plaintiffs argue that even if the foregoing analysis generally were correct (which they dispute), there would still be a genuine issue of material fact as to whether the personal audit of Mr. and Mrs. Duquette's 1992 and 1993 tax returns had in fact commenced at the time Agent Grimes had a conversation with Mrs. Duquette and made disclosures of tax return information to her. *See* Plaintiffs' Opposition at 22–24.

Plaintiffs also make the subsidiary argument that a factual dispute exists regarding whether the disclosures by Agent Grimes to Mrs. Duquette regarding the possibility of tax deficiencies were so speculative in nature that they constituted an overdisclosure of information beyond that permitted under Section 6103(h)(4). *See id.* at 34–35. The Court disagrees and concludes that there are no genuine issues of material fact in dispute.

With respect to plaintiffs' suggestion that the exception had not been triggered at the time of the disclosure to Mrs. Duquette because the personal tax audit had not yet officially commenced, plaintiffs' own exhibits, in addition to declarations submitted by the IRS, indicate that there is no question that the audit had already begun. The disclosure was made by Agent Grimes on March 26, 1997. Agent Grimes in her declaration states that almost two years earlier, on November 6, 1995, she was assigned the audits for both the corporate tax returns of NEDI and the joint personal tax returns of Norman and Aline Duquette for tax years 1992 and 1993. *See* Grimes Decl. ¶ 3. Furthermore, even before the audits were assigned to Agent Grimes, Mr. Duquette was aware that the personal tax audits were ongoing. In July 1995, Mr. Duquette made a "formal request to transfer the audits to Florida." Letter dated July 11, 1995, from Norman E. Duquette to J. Edward Coates, Exhibit B to Declaration of Christopher J. Kayser. And in August 1995, Mr. Duquette provided the IRS with a "signed extension for the examination of my 1992 personal tax return," so that it could be completed in Florida. Letter dated August 20, 1995, from Norman E. Duquette to J. Edward Coates, Exhibit C to Declaration of Christopher J. Kayser.[3] Thus,

---

**2.** Because the exceptions in Section 6103 are stated in the disjunctive, the Court need not analyze Section 6103(h)(4)(C) if it finds that Section 6103(h)(4)(B) applies. Although the facts in this case indicate that the second prong would be satisfied using either the item test (Section 6103(h)(4)(B)) or the transac-

tional relationship test (Section 6103(h)(4)(C)), the Court focuses solely on the former.

**3.** The August 20, 1995, letter was also offered by plaintiffs as Exhibit P2 at the hearing on defendant's motion for summary judgment.

there can be no question that the IRS had commenced the audit of the Duquettes' personal returns for 1992 and 1993 nearly *two years before* Agent Grimes talked with Mrs. Duquette on the telephone on March 26, 1997. *See generally Mid–South Music Co. v. United States*, 818 F.2d at 540 (Welford, J., concurring) (broadly construing when an audit begins for purposes of Section 6103(h)(4)); *Balanced Financial Management v. Fay*, 662 F.Supp. at 106 (same); *Datamatic Services Corp. v. United States*, 1987 WL 28603 (same).

As for the argument that a factual dispute exists with respect to whether the disclosures made by Agent Grimes in her March 1997 conversation with Mrs. Duquette were so speculative as to be beyond the scope of Section 6103(h)(4), this claim also is without any factual or legal basis. Agent Grimes was in the process of factgathering with respect to both the personal and corporate audits at the time of the conversation. It was legitimate for her to speak with Mrs. Duquette, both for the purpose of collecting information for the audits and in advising her as to the possible consequences for her own personal tax liability that might flow from the disallowance of deductions in the corporate returns.

As the Court said in *Lebaron v. United States*, 794 F.Supp. 947, 952 (C.D.Cal. 1992), a disclosure made under 26 U.S.C. § 6103(h)(4) "need only affect 'an' issue in a tax proceeding, not every issue." *See also Conklin v. United States*, 61 F.3d 915 (unpublished), 1995 WL 452498, at *1 (10th Cir.1995) ("The statute clearly authorizes the IRS to disclose the entire return even if only one part of the return is relevant."); *Tavery v. United States*, 32 F.3d 1423, 1429–30 (10th Cir.1994) ("Nowhere does the statute limit disclosure to instances where taxpayer liability is in issue and the disclosed information relates thereto."). Regardless of whether Agent Grimes informed Mrs. Duquette that deductions made by NEDI in 1992 and 1993 "definitely" would be considered personal expenses by the IRS or whether they "probably" would be, the disclosure clearly would affect a critical and interrelated issue in the tax proceeding: Mrs. Duquette's personal tax liability for constructive dividends. Indeed, the corporate and personal audits were so integrally related that the disclosure affected much more than *an* issue in the tax proceeding, it directly affected *the* issue. Agent Grimes' degree of certainty at the moment the disclosure was made is not a genuine issue of material fact.

## IV. EVEN IF THE DISCLOSURE WAS IMPERMISSIBLE IT WAS THE RESULT OF A GOOD FAITH MISINTERPRETATION OF 26 U.S.C. § 6103

Plaintiffs brought this action under 26 U.S.C. § 7431(a), which provides a cause of action for violations of Section 6103. Section 7431(b), however, qualifies the right to recover under Section 7431 by providing that "[n]o liability shall arise under this section with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(b).

■■■ In applying this good faith safe harbor, courts have adopted the objective standard used to determine good faith in executive branch qualified immunity cases—namely, that an unauthorized disclosure is not actionable unless the government employee violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Huckaby v. United States*, 794 F.2d 1041, 1048 (5th Cir.1986), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see McDonald v. United States*, 102 F.3d 1009, 1011 (9th Cir.1996) (applying executive immunity standard to Section 7431(b) analysis). The requirement that the law be "clearly established" means that in light of pre-existing law the unlawfulness of the complained of action "must be apparent," so that "a reasonable official would understand that what he is doing violates [a

clearly established statutory or constitutional] right." *Anderson v. Creighton*, 483 U.S. 635, 639–640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ Defendant claims that even if the disclosure was technically impermissible under Section 6103 (which it disputes), it was the result of a good faith misinterpretation of the Section because a split in the circuits on the interpretation of the term "administrative proceeding" in Section 6103(h)(4) virtually eliminates the possibility that a reasonable IRS official would have understood that she was violating a clearly established right. The Court agrees. As the Ninth Circuit put it: "At most, this division between the circuits on the characterization of an audit created uncertainty in the law. In no way had it been 'clearly established' that an audit was not an administrative proceeding for purposes of § 6103(h)(4)(C)." *McDonald v. United States*, 102 F.3d at 1011. Agent Grimes did not violate a clearly established right.

Plaintiffs' pleas for further discovery on this issue are unwarranted. Because the good faith Section 7431(b) safe harbor is to be evaluated by an objective standard, not a subjective one, plaintiffs' arguments regarding the need to explore the context in which Agent Grimes made the disclosure—and specifically whether she relied on Section 6103(h)(4) in good faith before disclosing information to Mrs. Duquette—are irrelevant. The good faith safe harbor applies here and immunizes defendant from liability even if the disclosure was in fact improper.

## V. MR. DUQUETTE DOES NOT HAVE STANDING

■ Finally, even if the Court found that the IRS improperly disclosed tax return information to Mrs. Duquette and even if it found that the good faith exception did not apply, Mr. Duquette would not be entitled to recover under Section 7431 because he lacks standing. Only a taxpayer whose tax return or return information is claimed to have been improperly disclosed may bring a lawsuit under Section 7431. *See Morgan v. United States*, 953 F.2d 1391 (10th Cir.1992) (unpublished), 1992 WL 14934; *Wilkerson v. United States*, 839 F.Supp. 440, 444 (E.D.Tex. 1993); *Brown v. United States*, 755 F.Supp. 285, 286–87 (N.D.Cal.1990); *Haywood v. United States*, 642 F.Supp. 188, 192 (D.Kan.1986). Courts interpreting this provision have uniformly dismissed complaints brought by persons other than the taxpayer either for lack of standing or for failure to state a claim. *See Wilkerson v. United States*, 839 F.Supp. at 444; *Brown v. United States*, 755 F.Supp. at 287.

The amended complaint in this case alleges only that NEDI's tax return information, and not any individual tax return information, was improperly disclosed to Mrs. Duquette. While Mr. Duquette argues that he was injured by the allegedly improper disclosure, Section 7431 explicitly restricts standing to taxpayers whose tax return information has been improperly disclosed. Mr. Duquette does not allege that *his* tax return information was improperly disclosed, only that NEDI's was. Therefore, only NEDI is a proper plaintiff.

For all of these reasons, the Court grants summary judgment for the Internal Revenue Service. An appropriate Order will be issued this same day.

SO ORDERED.