BRUCE R. THOMPSON, District Judge.
This appeal arises from an order of the Honorable Myron D. Crocker, United States District Court Judge, Eastern District of California, filed October 19, 1979, which dismissed as moot the appeal taken by Curvin J. Troné, Jr., and Herbert Kunzel, Trustee and Additional Trustee of the Estates of Westgate-California Corporation, West-gate-California Realty Co., and Tri-County Ranches, Inc., (hereinafter collectively referred to as “Appellants” or “Trustees”) from three orders of the Bankruptcy Court in Chapter XI Case No. 77-1366 of Roberts Farms, Inc. (hereinafter referred to as “RFI” or “the Debtor”).
On July 10, 1979, the Bankruptcy Court entered the following three orders:
(1) “Order Disallowing Claims 155, 156 and 157” (hereinafter referred to as “Disal-lowance Order”).
(2) “Order Confirming Plan of Arrangement” (hereinafter referred to as “Confirmation Order”).
(3) “Order Confirming and Approving Settlement with FDIC and Validating FDIC Security Interests (hereinafter referred to as “Order Approving FDIC Settlement”).
The Disallowance Order disallowed the Trustees’ claims (filed in excess of $1.5 billion) under § 57(d) of the Bankruptcy Act (11 U.S.C. § 93(d) as not capable of liquidation or of reasonable estimation without undue delay of the Debtor’s Chapter XI Case.
The Confirmation Order confirmed the Debtor’s Fifth Amended Plan of Arrangement (hereinafter sometimes referred to as “the Plan”) which provided for payment in full of all allowed general unsecured claims plus interest at 7% per annum from the date of the Debtor’s original petition to date of payment. These creditors were to be paid in full and in cash immediately upon the effective date of the Plan.
The Plan also provided for partial payment to the Federal Deposit Insurance Corporation, as receiver for the now defunct United States National Bank, (hereinafter referred to as “FDIC”) of its claims, which obligation was to be secured by security interests in most of the Debtor’s assets.
The Order Approving FDIC Settlement authorized the FDIC and RFI to pay the FDIC claims (filed in an aggregate amount in excess of $40.0 million) for $17.2 million under the Plan. The FDIC agreed to subordinate its payment to that of the general *795 unsecured creditors and agreed to extend its payments over a period of over four years.
On July 19,1979, Appellants attempted to obtain a writ of mandamus and, failing that, a stay from Judge Myron D. Crocker of the United States District Court, Eastern District of California. The Court denied the request for a writ and declined to grant a stay of the orders.
The Trustees then appealed from these three orders to the District Court. Prior to the hearing on the Trustees’ Appeal, the Debtor and the FDIC moved to dismiss the Trustees’ Appeal as moot on the ground, among others, that the plan had been substantially carried out. The District Court granted the motion and entered its “Order Dismissing Appeal” on October 19, 1979. The District Court specifically declined to hear the appeal on its merits.
The Trustees then filed with this Court of Appeals a Petition for Writ of Mandamus with respect to the District Court’s Order Dismissing Appeal as moot and, immediately thereafter filed a Notice of Appeal. Because a petition for writ of mandamus was not the procedurally correct method for pursuit of this appeal, this Court ordered that the Petition for Writ of Mandamus be construed as a notice of appeal. Apparently at the time of such order, this Court was unaware that an appeal had also been filed since Appellants failed to mention it in connection with their petition.
The Appellants have appealed from the order of the District Court which dismissed the appeals from the three orders of the Bankruptcy Court because the appeals were moot. The three orders of the Bankruptcy Court (1) disallowing the Trustees’ unliqui-dated claims, (2) confirming the plan of arrangement, and (3) confirming and approving settlement with FDIC (which were appealed to the District Court) are only incidentally and collaterally involved on this appeal which is a review of the appropriate exercise of the District Court’s judgment on the issue of mootness.
The tactics adopted by Appellants in the Bankruptcy Court and the District Court are lessons in procedural ineptitude. After the three substantive orders (disallowing the claims, approving the settlement, and confirming the plan) were entered, Appellants did not at any time apply to the bankruptcy judge for a stay, and this despite the unambiguous directions of Bankruptcy Rule 805.[1]
Instead, Appellants waited nine days and then filed a petition in the District Court for a Writ of Mandamus. The petition prayed for an order of the District Court vacating the three substantive orders of the Bankruptcy Court. The petition was accompanied by a motion to stay the three orders and to expedite the hearing. The petition for a Writ of Mandamus in lieu of a direct appeal was a procedural monstrosity.[2] *796 At that time no direct appeal had been taken. The District Court held a hearing on the petition for mandamus on July 19, 1979 and denied the petition and the motion for a stay, as well. The Notice of Appeal to the District Court from the three orders in question was not filed until July 20, 1979.
The Appellees have moved to dismiss the appeals as moot. Just prior to the date scheduled for oral argument, this court requested a report from the Appellees disclosing the extent to which the confirmed plan of arrangement had been implemented and consummated. A reply was received by letter dated April 2, 1980 which is annexed hereto as an appendix. Appellants have not disputed this report.
In the field of the administration of estates under the bankruptcy laws, the policy of the law strongly supports a requirement that a stay be obtained if review on appeal is not to be foreclosed because of mootness. This policy was memorialized by a 1976 amendment to Rule 805 by the addition of the last sentence:
“Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pendency of the appeal.”
This amendment is said to be declaratory of existing case law. In the Matter of Abingdon Realty Corp., Bankrupt, 530 F.2d 588 (4th Cir. 1976). It has been applied to bar consideration of an appeal on the merits in a number of situations.
The Abingdon case, supra, involved the sale of a bankrupt’s principal asset in a straight bankruptcy proceeding. In the Matter of National Homeowners Sales Service Corp., 554 F.2d 636 (4th Cir. 1977), the debtor’s principal asset was ordered sold in a Chapter XI proceeding. An appeal was taken but no stay was obtained. Again in Country Fairways, Inc. v. Mottaz, 539 F.2d 637 (7th Cir. 1976), there was a confirmed sale of all the bankrupt’s assets. Although the order was appealed, no stay was obtained. A like situation obtained in Sterling v. Blackwelder, 405 F.2d 884 (4th Cir. 1969). In re Rock Industries Machinery Corp., 572 F.2d 1195 (7th Cir. 1978), also involved a confirmed sale and an appeal not supported by a stay order. In each of the foregoing cases the merits of the appeals were not considered because no stays were obtained. See: Annotation, 44 A.L.R.Fed. 896. In each of them the appeals were dismissed because the issues were moot. In re Royal Properties, Inc., 621 F.2d 984 (1980).
Both Appellants and Appellees rely upon the decision of our court in Matter of Combined Metals Reduction Co., 557 F.2d 179 (9th Cir. 1977). This court had before it ten separate appeals from orders entered by the District Court in a proceeding for the reorganization of Combined Metals under Chapter X of the Bankruptcy Act. 11 U.S.C. § 501 et seq. The plan of reorganization was confirmed by court order on June 4, *797 1973. There had been one sale of property on court order prior to such confirmation. Subsequently other sales and transactions were effectuated after specific court authorization followed by an order of confirmation and approval. The appellee-trustee moved to dismiss eight of the ten appeals on the ground of mootness. The Circuit Court dealt with each of the appeals independently. In a thoroughly reasoned opinion it concluded that six of the appeals were moot and that two of them were partially moot. The principle succinctly stated by the court is:
“. . . the practical necessities involved in a successful reorganization require that unless an order of the bankruptcy judge or the district judge is stayed pending appeal, the trustee’s acts in accordance with that order should not thereafter be subject to reversal, even if the order is subsequently overturned on appeal.”
We are in full accord with this statement of principle, which is consistent with the policy of Bankruptcy Rule 805, as amended.
Appellants rely on that portion of the Combined Metals decision which declined to dismiss as moot the appeal from the order confirming the plan of reorganization. On this issue the court said:
“The other appeal which involves an issue not directly related to a sale of property by the trustee is Appeal No. 73-2155. One of the orders therein appealed is the order confirming the plan of reorganization. Although the appellant did not obtain a stay of that order, this issue differs from the other appeals covered by the trustee’s motion to dismiss. If we were to conclude that the appellant is correct, and that the plan was erroneously confirmed by the district judge, then a decision to that effect could have some effect on the proceedings below. While much of the debtor’s property has been liquidated, and many of the creditors have been paid, the plan still controls the actions of the trustee. In addition, if the district court’s order were reversed, the debtor corporation might be forced into bankruptcy, under § 236 of the Bankruptcy Act (11 U.S.C. § 636), which apparently is in accord with the appellant’s wishes. As a result, we are of the opinion that the appeal of the order of confirmation is not moot, and we will consider the merits of this issue below.”
We do not dispute the accuracy of the foregoing analysis, but it seems completely inapposite to the instant case. In this case the property transactions do not stand independently and apart from the plan of arrangement. Here the many intricate and involved transactions, some of which were summarized in the letter (Appendix), were contemplated by the plan of arrangement (even to and including liquidation and reorganization of the debtor corporation) and stand solely upon the order confirming the plan of arrangement for court approval and confirmation of the transactions. Were we to deny the motion to dismiss for mootness and on consideration of the merits reverse the order of the District Court, what would be the result? Are we not quite patently faced with a situation where the plan of arrangement has been so far implemented that it is impossible to fashion effective relief for all concerned? Certainly, reversal of the order confirming the plan of arrangement, which would knock the props out from under the authorization for every transaction that has taken place, would do nothing other than create an unmanageable, uncontrollable situation for the Bankruptcy Court. *798 Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293 (1895). This appeal should be dismissed for mootness.
*797 “. . . when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatsoever, the court will not proceed to a formal judgment, but will dismiss the appeal. And such a fact, when not appearing on the record, may be proved by extrinsic evidence.”
*798 An entirely separate and independent ground for dismissal has also been established because Appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court and have permitted such a comprehensive change of circumstances to occur as to render it inequitable for this court to consider the merits of the appeal. The touchstone precedent for this principle is Valley National Bank of Arizona v. Trustee, 609 F.2d 1274 (9th Cir. 1979). There our court held that the failure to seek stays coupled with a substantial change of circumstances would justify dismissal of the appeal for lack of equity. We think the thrust of this decision is that it is obligatory upon appellant in a situation like the one with which we are faced to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order (even to the extent of applying to the Circuit Justice for relief (Rule 51, Supreme Court Rules)) if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.[3]
In our case the Appellants flunked the first step. They did not apply to the bankruptcy judge for a stay (Rule 805), and have given no adequate reason on the record for not doing so. They did not appeal immediately, and applied for no stay in the District Court to support an appeal to that court. Instead they imprudently petitioned the District Court for mandamus and sought a stay in support of that petition. Both were denied. After the District Court dismissed the appeal for mootness, it denied Appellants’ motion for a stay pending appeal to this court, but granted a ten-day stay to permit application to this court for a stay. On October 26, 1979, Appellants again invoked the mandamus procedure by petition to this court and moved for a stay. This court granted a temporary stay and on November 7, 1979 entered an order denying a stay pending appeal. No application to the Circuit Justice was ever made.
As a consequence of Appellants’ minimal efforts to stay execution of the plan of arrangement the Trustee was free to implement the plan in accordance with its terms from July 10, 1979 until October 19, 1979, and continuously since November 7, 1979.
Admittedly, the principle of dismissal of an appeal for lack of equity applied in this case places a heavy burden on aggrieved party-appellants in bankruptcy cases. It is justified to prevent frustration of orderly administration of estates under various provisions of the Bankruptcy Act. If an appellant fails to obtain a stay after exhausting all appropriate remedies, that well may be the end of his appeal. In the instances specified in Rule 805, this is the declared result. For this reason there is a concomitant obligation on the courts to consider such stay applications thoroughly and with full appreciation of the consequences of a denial. That both the District Court and this court recognized the importance of this obligation is demonstrated by the temporary stays granted so that such thorough consideration might be given.
Finally, with respect to the equities of the situation from the point of view of Appellants, their unliquidated claims have not been discharged by disallowance under § 57(d) of the Bankruptcy Act, and are still enforceable against the debtor corporation and its successor whenever, if ever, they are reduced to judgment.
The appeal is dismissed.

. Rule 805. Stay Pending Appeal
A motion for a stay of the judgment or order of a referee, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be made in the first instance to the referee. Notwithstanding Rule 762 but subject to the power of the district court reserved hereinafter, the referee may suspend or order the continuation of proceedings or make any other appropriate order during the pendency of an appeal upon such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by the referee, may be made to the district court, but the motion shall show why the relief, modification, or termination was not obtained from the referee. The district court may condition the relief it grants under this rule upon the filing of a bond or other appropriate security with the referee. A trustee or receiver may be required to give a super-sedeas bond or other appropriate security in order to obtain a stay when taking an appeal. Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pendency of the appeal.

. See, Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980):
“It is not disputed that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations. Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382-385, 74 S.Ct. 145, 147-149, *796 98 L.Ed. 106 (1953); Ex parte Fahey, 332 U.S. 258, 259, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041 (1947). On direct appeal from a final decision, a court of appeals has broad authority to ‘modify, vacate, set aside or reverse’ an order of a district court, and it may direct such further action on remand ‘as may be just under the circumstances.’ 28 U.S.C. § 2106. By contrast, under the All Writs Act, 28 U.S.C. § 1651(a), courts of appeal may issue a writ of mandamus only when ‘necessary or appropriate in aid of their respective jurisdictions.’ Although a simple showing of error may suffice to obtain a reversal on direct appeal, to issue a writ of mandamus under such circumstances ‘would undermine the settled limitations upon the power of an appellate court to review interlocutory orders.’ Will v. United States, 389 U.S. 90, 98 n.6, 88 S.Ct. 269, 275, n.6, 19 L.Ed.2d 305 (1967).
“This Court has recognized that the writ of mandamus ‘has traditionally been used in the federal courts only “to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.” ’ Will v. United States, supra, at 95, quoting Roche v. Evaporated Milk Assn., 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy. Ibid.”

. We note with interest that the Valley Bank opinion was filed on May 30, 1979 before the three orders of the Bankruptcy Court were entered in this case. The same trustees (Troné and Kunzel) were parties to that case.