**Robert J. MARTIN and Miriam D. Martin, Plaintiffs–Appellees,**

v.

**INTERNAL REVENUE SERVICE, Defendant–Appellant.**

**No. 88–1493.**

United States Court of Appeals, Tenth Circuit.

Sept. 22, 1988.

William A. Whitledge, Atty., Tax Div. (Gary R. Allen and Jonathan S. Cohen, Attys., Tax Div., and William S. Rose, Jr., Asst. Atty. Gen., with him on the brief), Dept. of Justice, Washington, D.C., for defendant-appellant.

David C. Alexander, III and Janet Napolitano of Lewis and Roca, Phoenix, Ariz. (John Robson of Fabian and Clendenin, Salt Lake City, Utah, with them on the brief), for plaintiffs-appellees.

Before LOGAN, SEYMOUR, and BRORBY, Circuit Judges.

SEYMOUR, Circuit Judge.

Robert J. Martin filed suit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1982), to compel the Internal Revenue Service (IRS) to disclose to him tax protests filed by three other individuals. The protests concerned proposed adjustments to those individuals' tax returns based on proposed adjustments to the returns of certain pass-through corporate and partnership entities in which Martin and the other individuals had interests. The district court ordered the IRS to disclose the protests to Martin. Because we conclude that the protests are not "return information" of the corporate entities within the meaning of 26 U.S.C. § 6103 (1982 & Supp. IV 1986), we reverse.[1]

---

1. It is undisputed in this case that if section 6103 prohibits disclosure of this information, it is exempt from disclosure under FOIA. *See* 5 U.S.C. § 552(b)(3) (FOIA does not apply to mat-

## I.

From 1980 to 1983, Robert J. Martin, Robert L. Mehl, Patrick D. Maher, and Jordan R. Smith were shareholders in Western Oil Marketing (WOM), a subchapter S corporation. They were also partners in a limited partnership, Industrial Energy Partners (IEP). WOM and IEP were the sole partners in a general partnership, Western Operating Joint Venture (WOJV). All of these entities are pass-through entities. They file information returns with the IRS but pay little or no tax. Their partners/shareholders are primarily responsible for the tax consequences of the entities' income and expenses. 26 U.S.C. §§ 701, 1372 (1982). Any adjustments to the entities' returns thus affect the liabilities of their partners/shareholders. Mar-

tin severed his relationship with the entities in 1983.

The IRS audited the returns of the three entities and proposed adjustments to the income and expenses reported by each from 1980 through 1983. A copy of the revenue agent's report proposing the adjustments was sent to each of the partners/shareholders. The IRS then audited and sought adjustments to the returns of these individuals.[2] Martin alleges, and the IRS has not denied,[3] that Mehl, Maher, and Smith filed protests with the IRS contesting these proposed adjustments.[4] The IRS agent auditing Martin's returns has stated that she will adopt the same position as that taken by the IRS in response to Mehl, Maher and Smith's protests in her audit of Martin's returns. Rec., doc. 5, at 10, para. 7. Martin therefore seeks disclosure of the

ters that are "specifically exempted from disclosure by statute").

2. After an audit, a revenue agent's report is sent to those under audit along with a letter explaining the taxpayers' alternatives. IRS regulations provide that if audited taxpayers disagree with the revenue agent's proposed adjustments to their tax returns, they may file a response to the IRS letter. This response must be sent within 30 days; thus, the letter is known as a 30–day letter. One form of response is to file a protest and appeal to an IRS appeals officer. 26 C.F.R. § 601.105 (1988). Mehl, Maher and Smith have responded by filing protests.

3. 26 U.S.C. § 6103(b)(2) (1982) prohibits the IRS from revealing whether a taxpayer's return is under investigation, except as authorized by title 26. The IRS has therefore not confirmed the existence of any protests. We assume such protests exist.

4. The parties' statements of facts are not entirely clear as to whether the protests were filed in response to the proposed adjustments to the entities' information returns in themselves, or whether they contest the resulting proposed adjustments to Mehl, Maher and Smith's own returns. While the distinction between these is technical, it is significant. Protests that were filed in direct response to proposed adjustments to the entities' information returns would be return information of the entities.

The parties' briefs conflict on this question. The IRS's brief-in-chief argues that the protests are directed to contesting the proposed adjustments to the individual tax liability of Mehl, Maher and Smith. Martin argues that the protests, or portions of them, were submitted to the IRS in response to the proposed adjustments to the entities' returns and "relate to" the entities'

returns and Martin's own liability. The IRS, in its reply brief, states that Martin is mistaken and explicitly avers that the protests were submitted in response to proposed adjustments to the individual tax returns of Mehl, Maher and Smith. Reply Brief for the Appellant at 3 n. 2.

The protests are not part of the record and we have found no regulations that address the matter in this context. The record we do have is unclear. Martin's letters to the IRS and its response refer to the protests as protests to adjustments of the entities' returns. Other documents suggest the opposite, however. Martin's motion for summary judgment below describes the protests as "written objections to the IRS audits of [Mehl, Maher and Smith's] tax returns." Rec., doc. 5, at 3, para. 4. An affidavit submitted by Martin in support of this motion is even clearer. "To the best of my knowledge, Mehl, Maher and Smith have filed written objections or other protests to the IRS' proposed treatment of their income and these objections address proposed adjustments by the IRS to the federal income tax liability of [the entities]." *Id.* at 9–10, para. 6. Furthermore, an affidavit submitted by the IRS Disclosure Officer who handled Martins' request states that "[d]ocuments such as those requested by plaintiff's attorney would have been received by ... the Internal Revenue Service with respect to determination of individual third party liability...." Rec., doc. 11, at 4, para. 11. Finally and most significantly, although Martin asserts in his brief that the protests were furnished to the IRS with respect to the entities' returns, he does not contest the IRS's argument that the protests are return information of Mehl, Maher and Smith. We thus assume that the protests were submitted by Mehl, Maher and Smith to contest adjustments to their own tax liability.

protests, to the extent they relate to the entities' returns, in order to prepare his own response to the IRS.

After exhausting his administrative remedies, Martin filed this FOIA suit seeking disclosure of such parts of the protests as relate to the entities. A magistrate recommended that his request be granted with respect to WOM and IEP and denied as to WOJV, because Martin is not a partner or shareholder of WOJV. The district court granted the request as to all three entities and ordered the IRS to redact information identifying the taxpayers who filed the protests. After the court denied the IRS's motion to suspend the injunction pending appeal, the IRS made an emergency motion to this court for stay pending appeal. We granted the stay, conditioned on an IRS extension of time for Martin to respond to his 30-day letter, and expedited the appeal.

## II.

Section 6103 of the Internal Revenue Code, 26 U.S.C. § 6103, governs the confidentiality and disclosure of tax returns and return information. It provides that returns and return information may not be disclosed except as authorized by title 26. *Id.* § 6103(a). Return information is defined in relevant part as

> "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense...."

*Id.* § 6103(b)(2)(A). Partners and shareholders may obtain access to returns and return information of their partnerships and corporations pursuant to section 6103(e), which governs disclosure to persons having a material interest. That section authorizes a partner to examine the return of his partnership, *id.* § 6103(e)(1)(C), and a shareholder of a subchapter S corporation to examine the return of that corporation, *id.* § 6103(e)(1)(D)(v), upon written request. They may examine the return information of such partnerships or corporations if the Secretary determines that such disclosure would not seriously impair Federal tax administration. *Id.* § 6103(e)(7).

The parties agree that the same item of information may be the return information of more than one taxpayer. They also agree that the source of that information is not controlling. Therefore, data supplied to the IRS by A that may affect B's tax return may in theory be return information of A alone, of A and B, of B alone, or of no one. The parties disagree on how to determine whose return information such data would be in any given case. Martin argues that the key factor is whose tax liability may be affected by the data. The IRS argues that the key factor is whose tax liability is under investigation by the IRS. Specifically, the IRS defines "any person," as the term is used in the definition of return information, as "the person or persons whose liabilities are under investigation and as to whom information collected by the IRS is germane to a determination of their tax liabilities." Brief for the Appellant at 11–12.

The facts of this case make Martin's argument very appealing. Pass-through entities are to a large extent legal fictions in the tax context and that is particularly evident here. One could say with some justification that Martin is in fact contesting his tax liability with his former co-partners/shareholders. The IRS agent auditing his returns has stated that she will adopt the same approach to his returns as the IRS adopts with respect to Mehl, Maher and Smith's returns. While Martin may appeal this approach if it does not favor him, both with the IRS and in court, the IRS may already have considered and re-

jected the arguments he is likely to make before he gets that opportunity. It may seem both unjust and contrary to common sense to read the statute to allow Mehl, Maher and Smith to attempt to affect Martin's tax liabilities without permitting him to know their arguments and to reply to them.

To counter this argument, the IRS stresses the privacy rights that section 6103 is designed to protect. The Government points out that information supplied by one taxpayer with respect to his own tax liability often affects the liability of another taxpayer, and that such information does not thereby become disclosable to the second taxpayer merely because of its possible effect. At oral argument, counsel for the IRS drew a mental picture that illustrates the IRS' position. Suppose the IRS has a basket for each taxpayer and corporate entity. When the IRS makes a determination about an entity's return, the report is placed in the entity's basket. Under the authority of section 6103(e), it is also placed in the baskets of the entity's partners/shareholders. Individual reactions to the report are placed only in the basket of that taxpayer. If the IRS then reacts to the protests and changes the entity's return, that information is again placed both in the entity's basket and in those of its partners/shareholders.

We have found only two circuit cases, one of them ours, that have considered whether a specific item of information is the return information of a corporate entity. *See Mid–South Music Corp. v. United States*, 818 F.2d 536 (6th Cir.1987); *First Western Gov't Securities v. United States*, 796 F.2d 356 (10th Cir.1986). *Mid–South* and *First Western* do not provide us with much guidance, however, because of significant differences between their facts and the facts of this case. Those cases concern information released by the IRS; the communications did not reveal that the information supplier was under investigation or the substance of the legal basis for the IRS determination; and the information was arguably corporate information released to investors. Here, on the other hand, a third party is seeking information the IRS has determined to be nondisclosable; the information would necessarily reveal that Mehl, Maher and Smith are under investigation, and the substance of their legal arguments;[5] and the information is that of individual taxpayers and would be released to a corporate entity.[6] Furthermore, *Mid–South* and *First Western* concluded that the information in question was not the return information of the supplier. Here there can be no doubt that the protests are the return information of Mehl, Maher and Smith.

Two cases with facts more similar to those of this case are *Church of Scientology v. Internal Revenue Service*, —— U.S. ——, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987) (rejecting attempt by Church to require IRS to disclose information relating to Church in IRS case files and data systems) and *Ryan v. Bureau of Alcohol, Tobacco and Firearms*, 715 F.2d 644 (D.C.Cir.1983) (rejecting attempt to require IRS to disclose information supplied by liquor bottle manufacturers in aid of determination of tax liabilities of liquor manufacturers). In those cases, however, the issue was whether the information was return information at all. It is not disputed here that the protests are the return information of Mehr, Maher and Smith. The question we

---

**5.** The IRS describes tax protests as follows:

"A taxpayer's written protest may ... be argumentative and adversarial in nature. The taxpayer ... may cite and argue from precedent, may argue that the agent has misconstrued or misunderstood facts and transactions, and may attempt to cast the facts relied upon by the agent in a light more favorable to his own position. Even if a taxpayer used the return information of an entity in formulating his protest, that information may have been recast, reformulated or reorganized by an advocate.... Thus, a protest, although based upon the [revenue agent's report] issued by the agent, consists primarily of the analyses, interpretations and conclusion of the taxpayer or his attorney."

Brief for the Appellant at 27–28.

**6.** Martin argues that the protests are return information of the entities. Martin's right to the protests, if any, derives from his status as a partner/shareholder; if the entities are entitled to the information, he is as well, to the extent permitted by section 6103(e)(7).

address is whether they are also the return information of the entities; that is, our question is *whose* return information it is, not whether it is return information. We note that *Ryan* explicitly rejected the argument made by the IRS in this case, although with respect to an arguably different term, and held that information supplied to the IRS is the return information of "any person with respect to whom information is received." *Ryan*, 715 F.2d at 647.

Ultimately, we are convinced by two arguments. First, we agree with the IRS that the mere fact that information supplied by one person may affect the tax liability of another is insufficient to give the second a right to see that information. If one considers tax returns rather than return information, that principle is not difficult to accept. It is frequently the case that one transaction is reflected in many tax returns. If two taxpayers' returns were based on different allocations of resulting tax liability from a transaction, that difference in itself would not give one taxpayer a right to see the other's return. The right to see return information is no greater than the right to see tax returns. *See* 26 U.S.C. § 6103(e)(7).

Second, given the structure of section 6103, acceptance of the argument made by Martin would render section 6103(e) superfluous. Pass-through entities are to a large extent legal fictions for tax purposes. They pay little or no tax themselves. The information they submit is useful to the IRS primarily insofar as it affects the tax liabilities of their partners/shareholders. They present perhaps the quintessential case for Martin's argument that the key factor in determining access to return information should be whose liability is at stake. Were that argument the basis on which section 6103 is constructed, however, the returns submitted by pass-through entities to the IRS *would automatically* be the return information of their investors, the taxpayers. No statutory provision other than section 6103(c),[7] which provides for the disclosure of a taxpayer's return and return information to that taxpayer or his designee, would be needed.

In fact, however, entity returns and return information are disclosable to partners/shareholders only because of section 6103(e), which provides for the access of *third parties* to the return information of *others*. Congress recognized that persons with a material interest, as defined by statute, in another's tax return or return information, have a legitimate basis for disclosure. Partners and shareholders in subchapter S corporations are included in the class of such persons. Since we must give meaning to this statutory provision, and since Martin's argument would make section 6103(e) unnecessary in this context, we must reject it. If Congress thinks it necessary to specify that partners are persons with a material interest in a partnership, it cannot be the case that partners can automatically obtain access to partnership returns or return information on the ground that it is their own return information. The reverse must also be true. In short, the returns and return information of pass-through entities are disclosable to the taxpayers whose liability is actually at stake only because Congress so provided in explicit terms. We do not think that we can read the statute to permit such information to flow in the other direction—from partners shareholders to entities—without a corresponding explicit statutory provision.[8]

---

7. Section 6103(c) states:
"(c) Disclosure of returns and return information to designee of taxpayer.—The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a written request for or consent to such disclosure, or to any other person at the taxpayer's request to the extent necessary to comply with a request for information or assistance made by the taxpayer to such other person. However, return information shall not be disclosed to such person or persons if the Secretary determines that such disclosure would seriously impair Federal tax administration."
26 U.S.C. § 6103(c).

8. This statutory construction cannot be evaded by asserting that Martin has a material interest in Mehl, Maher and Smith's tax protests insofar as they contain information relating to the enti-

III.

The parties raise additional arguments which we do not address given our disposition of this case. In particular, Martin argues that disclosure is warranted under section 6103(h)(4)(C).[9] See *First Western*, 796 F.2d at 360-61. After reviewing the record, we conclude that this argument was not raised below, and we do not address it.

As directed in our order staying the judgment below, Martin has two weeks from the date of this judgment to respond to his 30-day letter.

REVERSED.

ties. The meaning of the term "material interest" is defined by statute. A partner has a material interest in his partnerships' return and return information under 26 U.S.C. § 6103(e)(1)(C) & (e)(7); he does not have a material interest in the return information of a co-partner because no provision so provides.

9. Section 6103(h)(4)(C) provides:
   "(4) Disclosure in judicial and administrative tax proceedings.—A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—

   .    .    .    .    .

   (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding...."
26 U.S.C. § 6103(h)(4)(C).