ESTATE OF LOUIS YAEGER, DECEASED, JUDITH WINTERS, ABRAHAM K. WEBER, RAPHAEL MEISELS, THE BANK OF NEW YORK, EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9795-85.        Filed January 26, 1989.

*Richard A. Levine* and *Albert Rosenblum,* for the petitioners.

*Kevin M. Flynn,* for the respondent.

### OPINION

WRIGHT, *Judge:* On January 28, 1988, the Estate of Louis Yaeger (hereinafter referred to as petitioner or the estate) represented by the executors, Judith Winters, Raphael Meisels, Abraham K. Weber, and the Bank of New York (hereinafter referred to collectively as the executors), filed a motion with this Court for a protective order pursuant to Rule 103(a).[1] Petitioner's motion was accompanied by several attached affidavits and a supporting memorandum of law. On April 1, 1988, respondent filed a notice of objection to petitioner's motion for a protective order with a supporting memorandum of law. On May 2, 1988, petitioner filed a reply memorandum.

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1986 as amended and in effect during the years in issue.

In the motion for a protective order, petitioner requests that we adopt its attached protective order which would prevent respondent from disclosing any confidential information obtained from petitioner in pretrial discovery. Specifically, petitioner's protective order would require respondent to obtain permission from the Court if respondent wishes to share the confidential information with anyone other than Mrs. Betty Yaeger, the decedent's widow, unless that person would agree to comply with the terms of the protective order. Further, in order to give the information to Betty Yaeger or her representatives, respondent would have to get permission from petitioner or an order from this Court. Finally, the protective order would require respondent to return all documentary evidence to the executors and have the record sealed when the trial was completed.

In the motion for a protective order and accompanying affidavits, petitioner explained its concern. The decedent, who died on May 11, 1981, left by will a large portfolio of stock and other property to his daughter, Judith Winters, and left only a relatively small bequest to his wife, Betty Yaeger. The will reflected a prenuptial agreement which decedent and his wife had signed limiting the amount of his estate she would inherit. Betty Yaeger has brought several actions against the estate since the decedent's death attempting to overturn the will and the prenuptial agreement. All have proved fruitless.[2]

The estate timely filed an estate tax return Form 706 (hereinafter referred to as the Form 706) on February 10, 1982, and on January 24, 1985, respondent issued a statutory notice of deficiency determining a deficiency in estate tax in the amount of $26,667,562. The estate timely filed a petition on April 22, 1985. The main substantive issue in dispute between the parties is the proper fair market value of a large block of stock, although there are

---

[2]Specifically, Betty Yaeger first objected to the probate of decedent's will claiming that there was a later will which she was ultimately unable to produce. She then brought suit in New York to have her prenuptial agreement invalidated and have herself declared owner of certain shares of stock included in decedent's estate. The estate was granted a summary judgment with respect to the validity of the prenuptial agreement. That ruling was affirmed and leave to appeal was denied. Betty Yaeger then challenged the jurisdiction of the New York courts over the estate, claiming that she and the decedent had been domiciled in Florida or Connecticut at the time of his death. She has brought yet another action against the estate in Florida for the recovery of possession of real estate which she claims is erroneously included in decedent's estate.

also questions about the deductibility of certain estate administration expenses. On December 1, 1986, respondent sent petitioner a first request for production of documents asking for all decedent's documents pertaining to stock holdings in a certain corporation.[3] Petitioner responded with a proposal that respondent keep the requested information confidential. Respondent's counsel refused to agree to petitioner's proposal which prompted petitioner to file the motion which we address here.

Petitioners' primary concern is that the information which respondent requests might ultimately be given to Betty Yaeger. Petitioner complains that defending the estate against Betty Yaeger's suits has needlessly wasted both time and money. In affidavits from Judith Winters, an executor, and Edward J. Reilly, counsel for the estate in the New York actions brought by Betty Yaeger, petitioner established that Betty Yaeger's recent activities demonstrate that she is eager to obtain a larger portion of decedent's wealth than that available to her under the will either through successful litigation or through coercive settlement with petitioner. Furthermore, petitioner maintains that Betty Yaeger would be far more likely to pursue this goal if she discovered the contents and value of decedent's estate.[4]

Until the filing of this motion, petitioner has been largely successful in denying Betty Yaeger access to the financial statements of the estate. In a case before this Court involving joint income tax deficiencies for the decedent and Betty Yaeger, she was removed from the case and respon-

---

[3]The requested documents included the decedent's own financial statements, journals, ledgers, correspondence, personal records, bank statements, canceled checks, notes, payment schedules, and stock certificates pertaining to decedent's holding and subsequent sale of stock in the Dorsey Corp. Respondent also requested any information which had been sent to decedent from the Dorsey Corp. including annual reports, corporate prospecti, memoranda, and accounting records. Furthermore, respondent requested any similar information which was in the possession of the executors and any valuation reports and "fairness opinions" which the estate had ordered. Respondent also asked for copies of State estate tax returns filed in Florida, New York, and Connecticut, all financial records pertaining to decedent's margin account debt, all records documenting estate administration expenses and executors' commissions, all documentation relating to the contents of decedent's estate at the time of his death and to the liquidation of assets contained therein.

[4]Petitioner has been a little ambivalent about precisely how this information would affect Betty Yaeger. On the one hand, petitioner maintains that Betty Yaeger would press her suit with even greater zeal if she knew how great the wealth of the estate actually was, and on the other, petitioner states that Betty Yaeger believes that the estate is considerably larger than it truly is.

dent agreed not to disclose information to her about the estate's holdings. We ordered the record sealed. Although our report in that case, *Estate of Yaeger v. Commissioner,* T.C. Memo. 1988-264, was filed on June 21, 1988, and revealed much about the decedent's wealth near the time of his death, petitioner maintains that much valuable and confidential information remains unpublished and petitioner seeks to protect this information from Betty Yaeger.[5] Petitioner was further motivated to make this motion upon learning that respondent had given the estate's Form 706 to Betty Yaeger when she had requested it.

In its motion, petitioner noted that Betty Yaeger is able to obtain any information she needs through formal discovery procedures once she files a claim against the estate. Petitioner, by affidavit, established that Betty Yaeger did receive requested documents on at least one prior occasion. However, petitioner requests us to issue the protective order to compel Betty Yaeger to obtain information directly from the estate pursuant to the rules of civil discovery rather than by way of a casual perusal of the entire contents of respondent's files.

The sole issue for our consideration in this proceeding is whether to issue a protective order pursuant to Rule 103(a)(7)[6] to prevent Betty Yaeger from acquiring material and information from respondent which she might use to pursue further meritless and burdensome actions against the estate. Petitioner urges us to grant such an order based on our discretionary power under Rule 103(a) and on the statutory foundation of section 7461(b).[7] Petitioner argues that the material respondent requests is confidential infor-

---

[5]Specifically, petitioner seeks to protect information pertaining to the sale of certain shares of stock during estate administration.

[6]Rule 103(a) provides:

"Upon motion by a party or any other affected person, and for good cause shown, the Court may make any order which justice requires to protect a party or other person from annoyance, embarrassment, oppression, or undue burden or expense, including but not limited to one or more of the following: * * * (7) That a trade secret or other information not be disclosed or be disclosed only in a designated way."

[7]Sec. 7461 provides in pertinent part:

SEC. 7461(a). Except as provided in subsection (b), all reports of the Tax Court and all evidence received by the Tax Court and its divisions * * * shall be public records open to the inspection of the public.

(b)(1) The Tax Court may make any provision which is necessary to prevent the disclosure of trade secrets or any other confidential information, including a provision that any document or information be placed under seal to be opened only as directed by the Court.

mation within the meaning of the Rule and the statute and thus, ought to be protected from disclosure.

In opposition to petitioner's motion, respondent argues that, as the wife of the decedent and a beneficiary under the will, Betty Yaeger has a material interest in the information within the meaning of section 6103(e)(1)(E),[8] and disclosure to her is permissible. Respondent further maintains that the decision to disclose information to Betty Yaeger is solely within his discretion. Because Congress specifically authorized the disclosure of information to the category of named persons in section 6103(e), respondent argues that it would be improper for us to vitiate Congress' clear goal of delegating the determination of this issue to the Secretary of the Treasury.

Section 6103(a) was enacted to protect taxpayers' private financial information contained within the files of the Internal Revenue Service (the Service) from other governmental and private inquiries by establishing a general policy of nondisclosure. *Chamberlain v. Kurtz,* 589 F.2d 827, 835 (5th Cir. 1979); *Stokwitz v. United States,* 831 F.2d 893, 895 (9th Cir. 1987), cert. denied 485 U.S. ____ (1988).[9] The statute was designed to protect taxpayers' privacy and, therefore, to encourage the taxpayers' free and open disclosure to the Service. *Lampert v. United States,* 854 F.2d 335, 336 (9th Cir. 1988). A taxpayer's return, or return information, generally may not be revealed to a third party unless such disclosure is specifically authorized under section 6103. *Martin v. Internal Revenue Service,* 857 F.2d 722 (10th Cir. 1988). Ordinarily, once the information has been revealed in a courtroom and becomes part of the record, it can no

---

[8]Sec. 6103(a) provides in pertinent part:

Returns and return information shall be confidential, and except as authorized by this title—
    (1) no officer or employee of the United States,

        *         *         *         *         *         *         *

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or employee * * *

  Sec. 6103(e)(1)(E) provides in pertinent part:

The return of a person shall, upon written request, be open to inspection by or disclosure to—
    (E) in the case of the return of an estate—
      (ii) any heir at law, next of kin, or beneficiary under the will, of the decedent, but only if the Secretary finds that such an heir at law, next of kin or beneficiary has a material interest which will be affected by the information contained therein * * *

[9]See Corey, "Confidentiality of Tax Returns," 36 N.Y.U. Inst. 1265 (1978).

longer be protected by section 6103. *Lampert v. United States, supra* at 337, relying on *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978).

We must first consider whether section 6103(e) would apply to the material which respondent seeks to obtain from petitioner if the information were in respondent's possession and Betty Yaeger made a proper request to obtain it from respondent. Section 6103(e) provides for disclosure of "returns and return information" to a limited group of persons, including, in the case of an estate, a beneficiary under the will. Section 6103(e)(7) specifically allows for return information of an estate to be given to a beneficiary under the will, if he can show that he has a material interest which will be affected by the information in the return. Furthermore, return information can only be given to such a person if the Secretary determines that disclosure would not seriously impair Federal tax administration. Sec. 6103(e)(7). Because Betty Yaeger is clearly a beneficiary under the decedent's will and respondent has determined that providing her with return information will not impair tax administration, respondent is entitled to give Betty Yaeger the documents which he seeks to obtain from petitioner if those documents constitute returns or return information.

Section 6103(b)(2)(A) defines return information as—

a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition or offense, and * * * be associated with or otherwise identify, directly or indirectly, a particular taxpayer. * * *

Courts have interpreted "return information" broadly. Many cases concern requests under the Freedom of Information Act for information and documents which were internally generated by the Service, and the Service attempts to use section 6103 as a shield. Return information includes audit reports and correspondence between the Service and the taxpayer. *Church of Scientology v. Internal*

*Revenue Service,* 484 U.S. ____ (1987). See generally *Long v. Internal Revenue Service,* 596 F.2d 362 (9th Cir. 1979), cert. denied 446 U.S. 917 (1980); *White v. Internal Revenue Service,* 707 F.2d 897 (6th Cir. 1983); *King v. Internal Revenue Service,* 688 F.2d 488 (7th Cir. 1982); *Neufeld v. Internal Revenue Service,* 646 F.2d 661 (D.C. Cir. 1981). As the Fifth Circuit Court of Appeals found in *Chamberlain v. Kurtz,* 589 F.2d 827, 841 (5th Cir. 1979), return information includes "material prepared or collected by the IRS with regard to * * * potential liability for deficiencies or penalties." See also *Grasso v. Internal Revenue Service,* 785 F.2d 70, 71 (3d Cir. 1986); *Heimark v. United States,* 14 Cl. Ct. 643 (1988). [10]

However, although the material which respondent seeks to obtain from petitioner clearly falls within the definition of return information, section 6103 also creates another category of return information called "taxpayer return information" which is defined in section 6103(b)(3) as "return information as defined in paragraph (2) which is filed with, or furnished to, the Secretary by or on behalf of the taxpayer to whom such return information relates." Because the material at issue would be "filed with or furnished to" respondent by petitioner, it is taxpayer return information. Section 6103(e) does not refer to the disclosure of taxpayer return information. Textually, the distinction between return information and taxpayer return information appears only in connection with section 6103(i) which restricts the disclosure of taxpayer return information with respect to nontax criminal investigations. The statute contains no other references to taxpayer return information.[11]

---

[10]See also *Moody v. Internal Revenue Service,* an unreported case (D.D.C. 1980, 45 AFTR 2d 80-1035, 80-1 USTC par. 9254), affd. in part and remanded 652 F.2d 795 (D.C. Cir. 1981), on remand 527 F. Supp. 535 (D.D.C. 1981), affd. 682 F.2d 266 (D.C. Cir. 1982) (documents relating to Service's investigation of bribery and corruption in State politics held to be return information); *Haywood v. United States,* 642 F. Supp. 188 (D. Kan. 1986) (notice of levy sent to taxpayer's employer constituted return information); *Texas Independent Producers Legal Action Association v. Internal Revenue Service,* 605 F. Supp. 538 (D.D.C. 1985) (all documents in Service's possession relating to proposed regulations constituted return information).

[11]There are few cases which define taxpayer return information. In *Heimark v. United States,* 14 Cl. Ct. 643 (1988), the court noted that the information furnished by a taxpayer had to relate to his own tax liability in order to constitute his taxpayer return information. "In other words, data provided by third parties and their representatives about those taxpayers' tax liabilities is their 'taxpayer return information' and not that of another taxpayer who may become subject to an investigation by reason of that data." The legislative history of the Tax

We conclude that, for purposes of section 6103(e), taxpayer return information is treated as return information. Congress created the category of taxpayer return information for the limited purpose of carving out a narrow exception in section 6103(i). Because there are no other references to taxpayer return information in section 6103, we find that Congress intended to treat taxpayer return information as return information under all other provisions in the section.

Petitioner maintains that the documents which respondent seeks could not be considered return information in respondent's hands because they will not have been "furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability." Because petitioner did not develop this claim but only mentioned it in a footnote, we decline to consider it further.

The second issue for our consideration is whether we have the authority to grant petitioner's motion for a protective order under Rule 103(a), notwithstanding the fact that the information requested from petitioner is available to Betty Yaeger from respondent under section 6103(e). Petitioner urges us to accept the view that because the documents will be produced under our order compelling discovery and pursuant to procedures, promulgated by this Court and sanctioned by Congress to facilitate the functioning of the Court, we have the authority to control and condition the extent to which respondent may disclose the information so produced to third parties. Respondent counters that section 6103 grants him exclusive discretion over whether to disclose return information.

There are no cases which directly address the issue of the priority of Rule 103 over section 6103 disclosure. The District Court for the District of Columbia noted "The legislative history surrounding section 6103 indicates that Congress simply never addressed the issue of access to tax information by private parties in nontax civil cases, pursu-

Reform Act of 1976, Pub. L. 94-455, S. Rept. 94-938, 94th Cong., 2d Sess., 90 Stat. 1520, explained that "taxpayer return information * * * includes, for example, data supplied by taxpayer's representative * * * to the IRS in connection with an audit of his return."

ant to court discovery orders." *McSurely v. McAdams,* 502 F. Supp. 52, 56 (D.D.C. 1980).

Two recent cases from the Ninth Circuit Court of Appeals held that section 6103 entitlement does not supersede the District Court's authority to rule on the validity of administrative summons. In *United States v. Author Services, Inc.,* 804 F.2d 1520 (9th Cir. 1986), the court affirmed the District Court's decision to enforce the Service's administrative summons only on the condition that the Service refrain from disclosing information pursuant to section 6103. In considering the Service's claim that its authority to disclose under section 6103 takes precedence over the District Court's power to review and enforce administrative summons proceedings, the court noted that "The Government cites no case, and we have discovered none, which so restricts the authority of a district court." 804 F.2d at 1525. Rather, in the case of such conflict, the broad power of the District Courts to regulate their own internal proceedings prevailed over the lesser interests of disclosure. In a subsequent case involving similar facts, the court, quoting *United States v. Powell,* 379 U.S. 48, 58 (1964), held that the District Court's restriction on the Service's disclosure of the summoned materials was a valid expression of the court's authority because "It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *United States v. Zolin,* 808 F.2d 1411, 1417 (9th Cir. 1987). See also *United States v. Barrett,* 804 F.2d 1376 (5th Cir. 1986); *McSurely v. McAdams, supra* at 56-57.

Respondent comes before this Court asking us to compel petitioner to produce the requested documents. Absent our explicit order, petitioner will not voluntarily comply with respondent's request. Both the Ninth Circuit and the Fifth Circuit have held that the Service's authority to disclose under section 6103 does not override a court's power over its own procedures and areas of authority. We concur in this reasoning. Our authority to prescribe rules to govern the practice before this Court was granted by Congress. Sec. 7453. Furthermore, section 6103 is a permissive statute, and the Secretary is authorized, but not compelled, to disclose returns and return information under certain situa-

tions and to certain persons or organizations. We conclude that we have the authority to condition and restrict the use of our own discovery procedures with respect to information jointly covered by section 6103 and Rule 103. Thus, notwithstanding the Service's authority under section 6103, we will issue a protective order if we determine that it is appropriate in this case.

In *Willie Nelson Music Co. v. Commissioner,* 85 T.C. 914 (1985), we considered a pretrial request for a protective order to seal the entire record up until the time of trial. As grounds for the motion, the taxpayer argued that as a "nationally known personality" he would be subject to damaging adverse publicity. 85 T.C. at 916. Although our general policy favors openness and full disclosure, we noted in *Willie Nelson Music* "that this Court has broad discretionary power to control and seal, if necessary, records and files in its possession, and the standard for review thereof is abuse of discretion." 85 T.C. at 918 (citations omitted). Furthermore, we noted that the test is a balancing between the interests of the public and the interests of the parties.

In evaluating petitioner's motion under Rule 103(a) we may consider cases which concern protective orders issued under rule 70(b) of Federal Rules of Civil Procedure, because Rule 103(a) was derived from rule 70(b), *Willie Nelson Music Co. v. Commissioner, supra* at 917; *Ryan v. Commissioner,* 568 F.2d 531, 538 (7th Cir. 1977). The party seeking the protective order must establish good cause. *American Telephone & Telegraph Co. v. Grady,* 594 F.2d 594, 596 (7th Cir. 1978). The party must produce "appropriate testimony and factual data" to establish that harm would flow from disclosure. *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982). That evidence must consist of more than merely conclusory or unsupported statements. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust,* 101 F.R.D. 34, 44 (C.D. Cal. 1984). While protective orders are frequently granted to protect the business reputation or trade secrets of the taxpayer, protective orders may also be granted to protect the confidential interests of private individuals. *Sendi v. Prudential-Bache Securities,* 100 F.R.D. 21 (D.D.C. 1983); *In re Smith,* 656 F.2d 1101 (5th Cir. 1981).

A protective order pursuant to Rule 103(a) would be appropriate when respondent attempts to use discovery procedures for "a fishing expedition." *Estate of Woodward v. Commissioner,* 64 T.C. 457, 459-460 (1975).

In the case at hand, the interests of respondent are relatively slight. Petitioner is not reluctant to give respondent all the materials he may request to assist him in trial preparation or settlement, as long as those materials remain confidential. Furthermore, Betty Yaeger's needs for the materials and information in petitioner's possession may be satisfied through ordinary pre-trial discovery procedures in an appropriate court with respect to any future actions she brings against the estate. On the other hand, petitioner's interests have been convincingly characterized as imperative. The possibility that respondent might transfer the information to Betty Yaeger, prompting yet another round of spurious litigation, gives respondent an unfair advantage over petitioner. Petitioner sincerely believes that access to more information will only add fuel to Betty Yaeger's efforts to harass and pester the estate, and fears being ultimately forced to make an unwarranted settlement in order to put an end to the harassment. When, as here, the burden on one party is so slight and the benefits to the other party are disproportionately great, we believe a protective order is appropriate.

In his memorandum opposing petitioner's motion, respondent argues that the language restricting disclosure of confidential information in Rule 103(7) and section 7461(b)(2) refers only to business-related confidentiality and not to the type of information which petitioner seeks to protect. Noting that several cases involving protective orders issued under Rule 103(7) involve threats to the moving party's business reputation, respondent maintains that the phrase "or other information" modifies "trade secrets" and is meant to be limited to other business related information. Respondent urges us to perceive the same meaning in the similar language of section 7461(b)(2). While respondent's argument is not without a superficial appeal, we conclude that the meaning of Rule 103(7) is not so limited as respondent suggests. The plain meaning of the language indicates that nondisclosure may be ordered for trade

secrets or for other information of any kind which the Court deems necessary to protect. Furthermore, Rule 103(a) authorizes this Court to make "any order which justice requires" and the possible protective orders listed in subsections (1) through (10) are not the exclusive expression of that mandate.[12] Thus, even if respondent's argument had merit, a restrictive reading of subsection (7) would not impair our authority to issue the protective order that petitioner requests.

Attached to its motion, petitioner submitted a protective order which it requests the Court to adopt. The order would prohibit the unauthorized transfer of confidential information received from petitioner to any third party without permission, from the Court or from petitioner, as well as prohibit the disclosure of such information to Betty Yaeger or any of her representatives. Respondent lodged several complaints about the substance of petitioner's proposed protective order.

First, respondent complains that the proposed order is unduly burdensome because each time he wishes to show confidential documents to a prospective witness, the witness must agree to be bound by the terms of the protective order. Respondent is also troubled by having to tell petitioner the names of all of his witnesses in order to demonstrate to petitioner that they have agreed to comply with the order. We sympathize with respondent's concerns and agree that this provision is unnecessary. Petitioner's only true concern is disclosure to Betty Yaeger. Thus, we will order only that respondent may not disclose confidential information received from petitioner to Betty Yaeger or her representatives without petitioner's explicit agreement.

Respondent then suggests that it would be unreasonable to leave the question of which documents are confidential up to petitioner. Since respondent will have access to all the requested documents and may show them with impunity to anyone other than Betty Yaeger or one of her agents, there does not appear to be any serious threat of harm or inconvenience to respondent in allowing petitioner to make

---

[12]Discussing proposed sec. 7461(b), House Ways and Means Committee report stated "The bill clarifies that the Tax Court may take any action necessary to prevent the disclosure of trade secrets and other confidential information." Supplemental report on H.R. 4170, H. Rept. 98-432, pt. 2, at 1570 (1984).

the confidentiality determination. Furthermore, petitioner appears to us to have been acting with sincere good faith throughout this proceeding and we do not anticipate that petitioner will abuse this discretion.

Thus, we will order that petitioner must produce the requested documents and that any documents which petitioner deems to be confidential may not be given by respondent to Betty Yaeger or her representative until the conclusion of the trial. At that time, we may entertain further discussion about the advisability of sealing the Court's record if either party so desires. Finally, petitioner filed a motion with this Court for leave to file an interlocutory appeal if its motion for a protective order is denied; and that motion is denied.

To reflect the foregoing,

*An appropriate order will be issued.*